**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CLOUD TANK INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    C.A. No. 26-136-JLH |
| | ) |
| INTEL CORPORATION, | )    **PUBLIC VERSION** |
| | )    **FILED: February 25, 2025** |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

## <u>FIRST AMENDED COMPLAINT</u>

Plaintiff Cloud Tank, Inc. ("Cloud Tank" or "Plaintiff"), by and through undersigned counsel, alleges upon knowledge as to its own acts and upon information and belief as to all others, as follows:

## I.    THE NATURE OF THE ACTION

1. This is an action arising *inter alia* from Defendant Intel Corporation's ("Intel" or "Defendant") improper acquisition, disclosure, and/or use of Cloud Tank's confidential and proprietary trade secrets and confidential information without authorization, including use of Cloud Tank's solutions to remediate processor vulnerabilities, in violation of federal and state trade secret statutes and written non-disclosure agreements.

2. Cloud Tank seeks preliminary and permanent injunctive relief, damages, restitution, exemplary damages, attorneys' fees, pre- and post-judgment interest and/or other appropriate relief.

108939263.2

## II.   THE PARTIES

### A. Plaintiff Cloud Tank, Inc.

3.      Plaintiff Cloud Tank, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business at 897 NE Brennan Lane, Hillsboro, Oregon 97124.

4.      Cloud Tank, Inc. was established in 2021 by Sergiu Ghetie, a former Intel Corporation ("Intel") security architect and researcher.  Cloud Tank provides security services to customers centered around hardware and cybersecurity and conducts security research for its customers, including the United States government.

5.      Cloud Tank's Secureware™ system is a collection of technologies designed to detect and prevent hardware and cybersecurity attacks intended to disable and disrupt hardware components and corrupt storage code and data.  Secureware™ technologies can be installed on existing hardware and without recompilation of existing software applications by updating the firmware or "microcode" that resides on and operates processors, for example, along with other Cloud Tank proprietary components.

6.      As part of, and to support, its security research efforts, Cloud Tank developed various techniques and tools that are designed to reveal security vulnerabilities present in processors.  This Cloud Tank proprietary technology works ███████████████████ ███████████████████████████████████████████████ ███████████████ Once identified, Cloud Tank devises mitigation strategies to resolve those vulnerabilities.

7.      Cloud Tank has used its proprietary technology to identify multiple security vulnerabilities across a range of microelectronic components and processors across e-infrastructure supply chains and manufacturers, including the Intel-manufactured processors that

are discussed herein. Cloud Tank has also used its proprietary technology to identify multiple security vulnerabilities across a range of microelectronic components and processors across e-infrastructure supply chains from ████████████████████

**B.      Defendant Intel Corporation**

8.      Defendant Intel Corporation is a Delaware corporation with its principal place of business at 2200 Mission College Blvd., Santa Clara, California.  Intel was established in 1968 and is one of the world's largest manufacturers of processors, memory modules and other hardware components that are fundamental to the function of personal computers, servers and various electronic devices.

9.      Upon information and belief, Intel manufactures approximately 200 million to 300 million microprocessors per year and earns over 60 billion dollars in revenue from worldwide sales.

## III.      JURISDICTION AND VENUE

10.      Cloud Tank realleges the allegations ¶¶ 1–9 as if fully set forth herein.

11.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Count I (below) arises under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq*.  The Intel products implicated by this action are sold extensively in this District, throughout the United States and throughout the world.

12.      In addition, this Court has supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy as the federal claim.

13.      This Court has personal jurisdiction over Intel for at least the following reasons (a) Intel is incorporated in Delaware, (b) Intel intentionally engages in substantial commerce within

3

the State of Delaware, and (c) Intel's form "Corporate Non-Disclosure Agreement" with Cloud Tank (attached hereto as **"Exhibit C"**) states that its terms are "governed by, and construed and interpreted under, the laws of the United States of America and the State of Delaware" and Intel agreed therein that any dispute "arising out of or related to [Exhibit C]…, may be brought in the courts of the States of Delaware or the Federal courts sitting in that State" and Intel further agreed to "irrevocably submit[] to the non-exclusive personal jurisdiction of those courts and irrevocably waive[d] all objections to that jurisdiction and venue for those disputes."  Exhibit C, at § 8.4.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)–(c) because Intel "resides" in this District by virtue of its incorporation, the agreements at issue provide for suit in Delaware federal courts and Intel irrevocably waived any objection to venue in this District.

## IV.     BACKGROUND

15.     Cloud Tank realleges the allegations ¶¶ 1–14 as if fully set forth herein.

### A.  Cloud Tank's Proprietary Security Technology and Trade Secrets

16.     Core aspects of Cloud Tank's business include researching security vulnerabilities, development of security tools, secure data hosting services and the design of attack-resistant components and devices.  To that end, Cloud Tank has developed techniques and tools that allow Cloud Tank to identify security vulnerabilities in hardware, software and firmware.  Additionally, Cloud Tank's vulnerability identification technologies are also used to develop Cloud Tank's own designs for hardened chips that are highly resistant to attacks.

17.     Cloud Tank through its founder and CEO was invited as an industry expert in cybersecurity and supply chain security to present at the Department of War under the Microelectronics Quantifiable Assurance Effort (QAE) led by the U.S. Department of the Air Force and mandated by the U.S. Congress. Cloud Tank demonstrated critical cybersecurity and

108939263.2

supply chain attacks, and a proposal for mitigating all such known and unknown attacks. The Cloud Tank feedback to the QAE panel was incorporated in the official report published in 2023.

18. Cloud Tank was then granted in 2024 a Direct to Phase II SBIR Award by the United States Air Force, for the demonstration of cybersecurity destructive and supply chain attacks and the development of a revolutionary technology that protects against all known and unknown cybersecurity destructive attacks and detects all known and unknown supply chain attacks. This technology is unique in that it protects against unknown attacks at the time of its deployment, significantly reduces the risk of large-scale cybersecurity and supply chain attacks and eliminates the need of perpetual patches for improving its security, thus having a significant positive impact on critical infrastructure security and U.S. National Security.

19. Security vulnerabilities can be hardware based (for example, arising out of flaws in the architecture and design of processors) or can be software/firmware based (for example, arising out of the microcode residing on processors that governs aspects of their behavior).

20. Among other things, both hardware and software/firmware-based security vulnerabilities can be exploited by threat actors to alter data, extract sensitive data, assist in breaking encryption, or render processors inoperable. As a result, these security vulnerabilities can implicate vital business functions, communications networks, financial systems and even national security.

21. Cloud Tank's techniques and tools for identifying security threats were developed independently from Cloud Tank's cooperation with Intel. Indeed, Cloud Tank's techniques and tools are platform agnostic in that they can be (and have been) ██████████████████ ███████████████████████████████████

108939263.2

22.     In operation, Cloud Tank can use its proprietary techniques and tools ███████ ███████████████████████████████████████████ This process generally involves ██████ ██████████████████████████████████████████████████████ Cloud Tank's proprietary tools also permit Cloud Tank to generate and assess a wide range of potential attack patterns in a comparatively small amount of time.  Importantly, Cloud Tank's methods ███████ ████████████████████████████████████ rather than relying on a static assessment ████████████████████████████

23.     Once Cloud Tank identifies a repeatable vulnerability through testing, Cloud Tank uses its expertise to design and propose mitigation strategies, which can take several forms.  In some instances, Cloud Tank's mitigation strategy involves patching device firmware, in other instances proposed alterations to chip architectures, and in further instances some combination thereof.

24.     To date, Cloud Tank has identified many ███████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████ Unknown vulnerabilities pose a substantial threat to information security, data integrity and operation continuity for businesses, governments and the systems they operate. Such vulnerabilities are often referred to as "zero day" exploits or vulnerabilities.  Cloud Tank Secureware™ is uniquely capable of mitigating even unknown vulnerabilities.

25.     Zero-Day exploits and their associated mitigation strategies are independently highly valuable in the fields of hardware and cybersecurity.  In the wrong hands, zero-day security vulnerabilities can be exploited to conduct a variety of attacks, including but not limited to data breaches, ransomware, financial fraud.  Detecting security vulnerabilities and addressing them before threat actors can exploit them prevents financial losses, the breach of intellectual property

6

and sensitive data, preserve operational continuity and avoid downtime and disruptions as proactively addressing security vulnerabilities is almost always more cost-effective than retroactive measures. Additionally, organizations that demonstrate robust security measures by identifying and mitigating zero-day threats enhance their reputation with customers and the public.

26. Accordingly, Cloud Tank's trade secrets include, without limitation: (a) non-public disclosures of identified vulnerabilities; and (b) mitigation strategies to address those same vulnerabilities.

27. These trade secrets have independent economic value derived, at least in part, from their confidential nature. Economic value arises from this confidential information in at least the following manners: (1) the identification of security vulnerabilities can be provided to manufacturers, thus allowing manufacturers to develop their own mitigation strategies; (2) independently, the mitigation strategies associated with the vulnerability can be licensed to manufacturers and/or end-users; (3) Cloud Tank can provide consulting services to assist manufacturers and/or end users with design, implementation or integration services relating to security mitigation strategies; (4) Cloud Tank's demonstrated cutting edge expertise allows Cloud Tank to acquire customers for other aspects of Cloud Tank's business model, such as attack-resistant chip designs and secure hosting services; and, (5) Cloud Tank's ability to not only identify security vulnerabilities but to also provide mitigation strategies and solutions represents a core competitive advantage for Cloud Tank over other security consultants and researchers.

28. As the discoverer of those security vulnerabilities and the developer of those mitigation strategies, Cloud Tank owns all right, title and interest to these trade secrets.

**B.      Cloud Tank's Reasonable Measures to Protect Its Trade Secrets.**

108939263.2

29. Cloud Tank's trade secrets, particularly those relating to zero-day security vulnerabilities, can be extremely dangerous in the hands of threat actors and even have national security implications.

30. For this, and other reasons, Cloud Tank has implemented comprehensive security measures and other reasonable measures to protect its proprietary and confidential information, including its trade secrets.

31. Cloud Tank protects its proprietary and confidential information via data encryption ████████████ using state of the art encryption algorithms, physical isolation of systems accessing the data from any external networks, multi-factor authentication using the state of the art authentication algorithms for access to the systems ███████████, and secure physical access facilities.

32. In addition to these electronic and physical security measures, Cloud Tank also executes non-disclosure agreements ████████████████████████████████ ██████████████████ with all entities that receive disclosures and security presentations from Cloud Tank.

33. Further, Cloud Tank affixes confidential and proprietary legends to all such security presentations and all associated written materials and further provides verbal warnings of their confidential nature as well as Cloud Tank's ownership thereof as part of verbal security presentations. Finally, Cloud Tank often provides follow-up written communications to remind and ensure that every party receiving Cloud Tank's trade secret information can have no doubt that the disclosures and presentations are confidential and the proprietary information of Cloud Tank disclosed pursuant to the receiving party's confidentiality obligations.

108939263.2

34.     All communications with Intel and disclosures to Intel aligned with the above-outlined policies and procedures.

**C.      The Confidentiality Agreements Between Cloud Tank and Intel.**

35.     Cloud Tank and Intel executed two "Corporate Non-Disclosure Agreements" (or "CNDA").  The first, was executed on or about July 12, 2021, between Intel and Cloud Tank and bears ███████████████████ A true and correct copy of which is attached hereto as **Exhibit A**.  This CNDA was superseded by another CNDA between the parties, bearing ██████████ ████████ and is dated November 23, 2021.  A true and correct copy of which is attached hereto as **Exhibit C** (herein after "Intel CNDA"). The Intel CNDA is general in nature and not tied to any specific project, purpose, work or deliverables and allows the parties to exchange confidential information as a basis for other transactions, such as licenses, consulting, etc.

36.     The second CNDA, was executed on or about December 3, 2021, between Intel Capital and Cloud Tank, bearing Intel Capital Serial No. ██████████ A true and correct copy of which is attached hereto as **Exhibit B** (hereinafter "Intel Capital CNDA").  The Intel Capital CNDA is general in nature and not tied to any specific project, purpose, work or deliverables and allowed the parties to exchange confidential information as a basis for other transactions, such as licenses, consulting, etc.

37.     Both agreements define "Confidential Information," both agreements require the receiving party to maintain confidentiality with reasonable care, both agreements restrict disclosure to specified personnel with a need to know, both agreements prohibit disclosure to third parties, and both agreements limit copying.  See Intel CNDA, Exhibit C; Intel Capital CNDA, Exhibit B.

108939263.2

38. Specifically, "Confidential Information" is defined as "confidential, proprietary, and trade secret information of the disclosing party to be disclosed by the disclosing party under this Agreement, and comprises: (A) information in tangible form that (1) bears a Confidentiality Legend, or (2) does not bear any Confidentiality Legend, if the receiving party knew, or reasonably should have known under the circumstances, that the information was confidential and had been communicated to it in confidence, and (B) discussions about that information that may occur before, at the same time, or after disclosure of the information." See e.g., Intel CNDA, Exhibit C, § 1.2.

39. Both agreements impose a confidentiality duration of five (5) years from receipt for each disclosure, subject to enumerated exceptions (e.g., public, third-party, prior knowledge, independent development, or compelled disclosure with notice). Intel CNDA, Exhibit A, § 4. None of the enumerated exceptions apply to any of the Cloud Tank "Confidential Information" disclosed to Intel pursuant to the confidentiality obligations set forth in the Intel CNDAs, Intel CNDA, Exhibit C; Intel Capital CNDA, Exhibit B.

40. More specifically, Exhibit C imposed non-disclosure duties and obligations on a party receiving confidential information in § 3. See e.g., Intel CNDA, Exhibit A, § 3. Pursuant to those duties, Intel as the party receiving Cloud Tank's "Confidential Information" was obligated to "maintain the confidentiality of the Confidential Information with at least the same degree of care that it uses to protect its own confidential and proprietary information, but no less than a reasonable degree of care." See Exhibit A, § 3.1.

41. Additionally, Intel as the receiving party of Cloud Tank's "Confidential Information" was obligated to disclose any "Confidential Information only to [Intel's] Affiliates and Covered Persons who have a need to know and who have agreed in writing to abide by

10

nondisclosure terms at least as comprehensive as those in this Agreement." See Intel CNDA, Exhibit C at § 3.2. Intel, as the receiving party of Cloud Tank's Confidential Information was obligated to "not disclose any Confidential Information to any other third party." Id. at § 3.3. Finally, Intel, as the receiving party of Cloud Tank's "Confidential Information" was obligated not to "make any copies of the Confidential Information except copies that are necessary for the receiving party's disclosures under Section 3.2." Id. at § 3.4.

42.     Neither the Intel CNDA (Exhibit C) nor the Intel Capital CNDA (Exhibit B) grants any license to use or disclose Cloud Tank's "Confidential Information" or any other form of Cloud Tank's intellectual property. Further, both agreements state that any license to such "Confidential Information" or other intellectual property must be signed in an express, separate license agreement. See e.g., Intel CNDA, Exhibit C, § 8.2 ("No License. In this Agreement, neither party grants to the other party any license under any patents, copyrights, trademarks, or mask works, either expressly, by implication, inducement, estoppel, or otherwise. Any license under these intellectual property rights must be express and in a separate signed writing.").

43.     No separate license agreement or authorization was signed by the parties covering the Cloud Tank "Confidential Information" that is the subject of this action.

### D.     Cloud Tank's Disclosure of its 2023 Vulnerabilities and Mitigation Strategy Trade Secrets to Intel.

44.     Intel's various chip designs are assigned by Intel a code-name that indicates aspects of their design and generation. Different Intel processor models numbers may come from the same family code name. For example, the Intel "Sky Lake" family of processors, upon information and belief, include multiple models and product numbers that share certain design features (e.g., Intel® Xeon® Gold 6148). For the purposes of this Complaint, implicated Intel processor products known to Cloud Tank will be referred to by their family code-names.

11

45. In January of 2023, Cloud Tank's proprietary ███████████████████

████████████████████████████████████████████████████████████

█████████████████████████████ but these identified ██████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████

46. The first specific ███████████ identified by Cloud Tank ██████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████ It acts as a central hub that consolidates and controls communication between the processor and other hardware components such as storage devices, USB ports, audio interfaces, network controllers, and more. ██████████████

████████████████████████████████████████████████████████████

███████████████████████████████████ represents Cloud Tank Trade Secret (1).

47. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████

48. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

108939263.2

[black redaction bar]

[black redaction bar]

49. Cloud Tank contemporaneously developed a risk mitigation solution to address this identified vulnerability in the form of [black redaction bar]

[black redaction bar]

[black redaction bar]

[black redaction bar]

The solution to this first security vulnerability was implemented at that time in Cloud Tank's Secureware™ proprietary solution in form of [black redaction bar]. Intel Corporation does not have a license to Cloud Tank's Secureware™ [black redaction bar] or to Cloud Tank's pseudo-code solution. The pseudo-code solution represents Cloud Tank Trade Secret (2).

50. The second [black redaction bar]

[black redaction bar]

[black redaction bar]

[black redaction bar] Cloud Tank Trade Secret (3).

51. If discovered and exploited by a threat actor, this [black redaction bar]

[black redaction bar]

[black redaction bar]

[black redaction bar]

52. Cloud Tank contemporaneously developed a risk mitigation solution to address this second identified vulnerability in the form of [black redaction bar]

[black redaction bar] The solution to the second security vulnerability was also implemented at that time in Cloud Tank's Secureware™ proprietary solution [black redaction bar]

108939263.2

███████████████ Intel Corporation does not have a license to Cloud Tank's Secureware™ ████████████ or to Cloud Tank's pseudo-code solution. This pseudo-code solution represents Cloud Tank Trade Secret (4).

53. On February 16, 2023, Cloud Tank CEO Sergiu Ghetie sent an email to ████████ ██████ Intel ███████████████████████████████ and ███████████ Intel Legal Counsel ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████

54. Shortly after this email, Mr. Ghetie met with Intel chip security personnel and disclosed both the security vulnerabilities and Cloud Tank's mitigation strategy to address those vulnerabilities. Mr. Ghetie's presentation was marked with appropriate confidentiality legends and together with Mr. Ghetie's oral presentation left no doubt that both the identification of the vulnerabilities in at least the Broadwell and Skylake products as well as Cloud Tank's mitigation strategy were both proprietary and confidential information of Cloud Tank.

55. The purpose of sharing ████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████

108939263.2

56. Neither the email to Intel nor the presentation materials granted any express or implied license to the Cloud Tank ███████████████████████████ ████████████████.

57. Upon information and belief, Intel's ██████████ family of processors is a successor to Intel's "Haswell" family of processors and was released in 2014. ██████████ is built on Intel's 14 nm platform and is widely used in laptops, desktops and for servers.

58. Upon information and belief, Intel's ██████████ family of processors was introduced in 2015. ████████ was also built on Intel's 14nm platform and is widely used in personal computers and high-performance workstations.

59. Upon information and belief, to date, Intel has sold approximately 40 million ████████████████████████ products.

**E.     Cloud Tank's Disclosure of its 2025 Vulnerability Trade Secrets to Intel.**

60. In early 2025, Cloud Tank's proprietary security vulnerability tools discovered security vulnerabilities in at least Intel's ████████████████████████████████ ████████████ family of processors (hereinafter the "2025 Vulnerabilities" and the "Cove products").

61. The 2025 Vulnerabilities included vulnerabilities ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████ These vulnerabilities represent Cloud Tank Trade Secrets (5), (7) and (9).

62. ████████████████████████████████████████████████████████ ████████████████████████████████████████████

108939263.2

63. ██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████

64. Cloud Tank contemporaneously developed a mitigation strategy to address these identified vulnerabilities in the form of pseudo-code ████████████████████████████ ████████ Additionally, Cloud Tank implemented a mitigation strategy in its Secureware™ ████████ ████████████████████ Intel does not have a license to Cloud Tank's Secureware™ ████████ ████ or to Cloud Tank's pseudo-code solutions. These pseudo-code solutions represent Cloud Tank Trade Secrets (6), (8) and (10).

65. On March 7, 2025, and again on March 16, 2025, Mr. Ghetie forwarded a second set of emails to ████████████████████████████████ Intel ████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████ The March 16, 2025, email also explained that ████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████

66. On March 17, 2025, Mr. Ghetie held the aforementioned scheduled meeting. As above, Mr. Ghetie's presentation was marked with appropriate confidentiality legends and together with Mr. Ghetie's oral presentation no doubt could exist that the Cloud Tank identified security vulnerabilities relating to ████████████ and the Cloud Tank developed mitigation strategies were proprietary and confidential to Cloud Tank.

108939263.2

67.     On April 10, 2025, Cloud Tank had a follow-up meeting with Intel's security leadership team at the Intel Jones Farm campus.  In attendance for Intel were ███████████ ███████████████████████████ Intel Senior Director.

68.     Again, Mr. Ghetie's presentation was marked with appropriate confidentiality legends and together with Mr. Ghetie's oral presentation no doubt could exist that both the identification of the vulnerabilities in the Cove products and the Cloud Tank developed mitigation strategy were both proprietary and confidential to Cloud Tank.

69.     Neither the emails to Intel from Cloud Tank regarding the 2025 Vulnerabilities █ ███████████ and the associated mitigation strategies, nor the presentation and associated materials granted any express or implied license to Intel to the Cloud Tank identified security vulnerability or the Cloud Tank developed mitigation strategy.

70.     Upon information and belief, Intel has sold approximately collectively 1.1 billion of the ██████████████████████████████████████████████████████ products.

**F.     Intel's Misappropriation of Cloud Tank's 2023 Vulnerabilities and Mitigation Strategy Trade Secrets.**

71.     Upon information and belief, Intel utilized the 2023 Vulnerabilities and the disclosed mitigation strategies ████████████████████████████████████ products in a cryptographically signed patch issued in ██████████ .

72.     Similarly, upon information and belief, Cloud Tank believes that Intel relied upon the Cloud Tank confidential information, including the Cloud Tank pseudo-code, relating to the 2025 Vulnerabilities to develop patches ███████████████████████████████ ██████████████████ products.

73.     Pursuant to the Intel CNDA (Exhibit C), Intel neither sought nor was granted any permission or license to any of the Cloud Tank confidential information associated with the ███

██████████████. Indeed, Intel was contractually obligated by its own CNDA to protect Cloud Tank's confidential information, not to distribute it to third parties or unauthorized personnel or to use it for Intel's own commercial purposes.

74. As a direct and proximate result of Intel's conduct, Cloud Tank has suffered and will continue to suffer irreparable harm and substantial damage, including lost licensing revenue, unjust gains by Intel, the conversion of Cloud Tank intellectual property, the loss of business opportunities and commercial harm.

## IV. COUNT I — MISAPPROPRIATION OF TRADE SECRETS

*(Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.)*

75. Cloud Tank realleges the allegations ¶¶ 1–74 as if fully set forth herein.

76. Cloud Tank owns protectable trade secrets as defined by 18 U.S.C. § 1839(3), including, but not limited to: (1) the identified security 2023 and 2025 Vulnerabilities; and, (2) Cloud Tank's mitigation strategies to address these identified 2023 Vulnerabilities and 2025 Vulnerabilities, including but not limited to the associated pseudo-code. Collectively, these trade secrets are referred to as the "Cloud Tank Trade Secrets" and are enumerated (1) through (10) as detailed above.

77. Cloud Tank has taken reasonable measures to keep the Cloud Tank Trade Secrets confidential by implementing policies, technical controls, physical and electronic security systems, labeling and legends as well as executing non-disclosure agreements, including agreements with Intel itself.

78. The Cloud Tank Trade Secrets derive independent economic value from not being generally known or readily ascertainable by proper means to others who can obtain economic value from their disclosure or use.

108939263.2

79. The Cloud Tank Trade Secrets also derive independent economic value by providing Cloud Tank with a technically superior competitive advantage over others that provide security services to customers centered around hardware and cybersecurity.

80. The Cloud Tank Trade Secrets relate to products/services used in, or intended for use in, interstate or foreign commerce, including the Intel Broadwell, Cascade Lake and Cove products, which are microprocessors (including firmware) and these Intel products are sold or marketed in this State, throughout the United States and throughout the world.

81. Intel misappropriated Cloud Tank's Trade Secrets by (a) acquiring them under circumstances imposing a duty to maintain secrecy or limit use (i.e., the CNDA(s)); and/or (b) disclosing or using them without consent and beyond the scope of permitted "evaluation" use. See 18 U.S.C. § 1839(5).

82. Intel knew or had reason to know that the Cloud Tank Trade Secrets were acquired under a duty of confidentiality, a duty established by its own CNDA form agreement executed with Cloud Tank.

83. Intel knew or had reason to know that any use or disclosure of the Cloud Tank Trade Secrets was unlicensed and unauthorized.

84. Accordingly, Intel knew or had reason to know that its use and/or disclosure to third parties of the Cloud Tank Trade Secrets occurred by unlawful and "improper means", including breach of the duty to maintain the confidentiality of the Cloud Tank Trade Secrets embodied in Intel's own CNDA agreements with Cloud Tank.

85. Intel's misappropriation of the Cloud Tank Trade Secrets occurred by using the Cloud Tank identified vulnerabilities to develop firmware patches ███████████████████ ██████████████████████████████████████.

108939263.2

86. Intel's misappropriation of the Cloud Tank Trade Secrets also occurred through Intel's incorporation of the Cloud Tank mitigation strategies (either directly or through the creation of derivative works thereof) into ███████████████████████████████ ████████████████████████████████████████ to third parties.

87. Intel's misappropriation of the Cloud Tank Trade Secrets has proximately caused and will continue to cause Cloud Tank irreparable harm and damages in an amount to be proven at trial, including actual damages, unjust enrichment, royalties, among other forms of damages.

88. Intel's conduct in misappropriating the Cloud Tank Trade Secrets was willful and malicious, warranting exemplary damages up to two times the amount of damages.

89. Intel's willful and malicious misappropriation of the Cloud Tank Trade Secrets warrants the award of Cloud Tank's reasonable attorneys' fees. See 18 U.S.C. § 1836(b)(3).

90. Cloud Tank is entitled to injunctive relief to prevent any actual or threatened misappropriation. See 18 U.S.C. § 1836(b)(3)(A).

## V.    COUNT II — MISAPPROPRIATION OF TRADE SECRETS

*(Delaware UTSA, 6 Del. C. § 2001 et seq.)*

91. Cloud Tank realleges ¶¶ 1–90 as if fully set forth herein.

92. The Cloud Tank Trade Secrets (1) through (10) as described above constitute "trade secrets" within the meaning of 6 Del. C. § 2001(4).

93. Intel misappropriated the Cloud Tank Trade Secrets within the meaning of 6 Del. C. § 2001(2) by acquiring, disclosing, and/or using them without consent and in breach of a duty to maintain secrecy.

94. Intel's misappropriation has caused and will continue to cause Cloud Tank irreparable harm and damages.

108939263.2

95. Intel's conduct was willful and malicious, entitling Cloud Tank to exemplary damages (up to twice compensatory damages) and reasonable attorneys' fees. See 6 Del. C. § 2003(b), § 2004.

96. Cloud Tank is entitled to injunctive relief prohibiting Intel's use or disclosure and requiring reasonable steps to protect secrecy. See 6 Del. C. § 2002.

## VI. COUNT III — BREACH OF CONTRACT

*(Delaware Law -- Confidentiality Agreements)*

97. Cloud Tank realleges ¶¶ 1–96 as if fully set forth herein.

98. The CNDA(s) executed between Intel and Cloud Tank are valid, enforceable contracts. See Exhibits A, B and C. The CNDA(s) are forms drafted by Intel itself and in use by Intel since 2016. Id.

99. The CNDA imposed non-disclosure duties and obligations on a party receiving confidential information in § 3. See Exhibit C, § 3. Pursuant to those duties, Intel as the party receiving Cloud Tank Trade Secrets was obligated to "maintain the confidentiality of the Confidential Information with at least the same degree of care that it uses to protect its own confidential and proprietary information, but no less than a reasonable degree of care." See Exhibit C, § 3.1. Additionally, Intel as the receiving party of Cloud Tank's Confidential Information was obligated to disclose any "Confidential Information only to [Intel's] Affiliates and Covered Persons who have a need to know and who have agreed in writing to abide by nondisclosure terms at least as comprehensive as those in this Agreement." See Id. at § 3.2. Intel, as the receiving party of Cloud Tank's Confidential Information was obligated to "not disclose any Confidential Information to any other third party." Id. at § 3.3. Finally, Intel, as the receiving party of Cloud Tank's Confidential Information was obligated not to "make any copies of the Confidential

21

Information except copies that are necessary for the receiving party's disclosures under Section 3.2." Id. at § 3.4.

100. Cloud Tank performed all conditions, covenants, and promises required of it or such performance is excused. This includes appropriately fixating all disclosures of the Cloud Tank Trade Secrets with appropriate legends and other indicia that the information they contained had protected status as Confidential Information under the CNDA(s).

101. Intel breached the CNDA(s) by, inter alia, using the Cloud Tank Trade Secrets beyond permitted "evaluation only" purpose; incorporating Cloud Tank's solutions into Intel microcode patches, either directly or through the creation of derivative works based thereon; and disclosing and/or distributing this information to third parties.

102. As a direct and proximate result, Cloud Tank has suffered damages in an amount to be proven at trial, including but not limited to actual damages and consequential damages.

## VII. COUNT IV — UNJUST ENRICHMENT

*(Delaware Law)*

103. Cloud Tank realleges ¶¶ 1–102 as if fully set forth herein.

104. Intel has been unjustly enriched by its unauthorized use of the Cloud Tank Trade Secrets, and Cloud Tank correspondingly impoverished, including through avoided development costs associated with the investigation and identification of the security vulnerabilities performed by Cloud Tank and the costs of development (at least in part) associated with the Intel patches that incorporate the Cloud Tank mitigation strategies.

105. Intel's enrichment is directly related to Cloud Tank's impoverishment and is unjust because Intel lacked any license or authorization to use Cloud Tank Trade Secrets beyond evaluation.

22

106. To the extent any contract is found not to govern some or all of the conduct at issue, equity requires restitution, and/or disgorgement.

## VIII.  COUNT V — CONVERSION

*(Delaware Law)*

107. Cloud Tank realleges ¶¶ 1–106 as if fully set forth herein.

108. Cloud Tank owns and has the right to possess the physical and electronic embodiments of the Cloud Tank Trade Secrets, and any copies thereof.

109. Intel wrongfully exercised dominion and control over Cloud Tank's property, including by retaining, using, and distributing copies and derivatives without authorization and in defiance of Cloud Tank's rights in the Cloud Tank Trade Secrets.

110. Intel's conversion has damaged Cloud Tank in an amount to be proven at trial. Cloud Tank seeks the return of all materials, destruction of unauthorized copies, and compensatory damages.

## IX.  COUNT VI — TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS OPPORTUNITY

*(Delaware Law)*

111. Cloud Tank realleges ¶¶ 1–110 as if fully set forth herein.

112. A reasonable probability existed that Cloud Tank would enter into business relationships with various entities having purchased and/or utilizing the impacted Intel products, such as Broadwell, Cascade Lake and various "Cove" products, including but not limited to government agencies, critical-infrastructure operators, data center operators, commercial customers and the like for licensing Cloud Tank's vulnerability-mitigation solutions and/or firmware and secure chip designs or through licenses to Cloud Tank's Secureware™ product,

23

which incorporates protections to the security vulnerabilities identified by Cloud Tank (as well as other vulnerabilities both known and unknown).

113. Intel intentionally and wrongfully interfered with those opportunities and relationships by, *inter alia*, using and disclosing the Cloud Tank Trade Secrets through the distribution of Intel's patches and forthcoming patches, thereby displacing Cloud Tank and undermining Cloud Tank's opportunities and/or by communicating to third parties in a manner that impaired Cloud Tank's opportunities.

114. Intel's interference was a proximate cause of Cloud Tank's loss of those prospective economic relationships, causing damages in an amount to be proven at trial, including lost profits and diminution in enterprise value.

## X.     REQUEST FOR INJUNCTIVE RELIEF

115. Cloud Tank seeks preliminary and permanent injunctive relief prohibiting Intel from use, disclosure or, alternatively, further use or disclosure of the Cloud Tank Trade Secrets; requiring Intel to take reasonable steps to maintain secrecy; and, mandating the return and/or destruction of Cloud Tank's materials and any derivatives.

## XI.    JURY DEMAND

116. Cloud Tank demands a trial by jury on all issues so triable.

## XII.   VIII. PRAYER FOR RELIEF

WHEREFORE, Cloud Tank respectfully requests that the Court enter judgment in its favor and against Intel and award the following relief:

A. Preliminary and permanent injunctive relief enjoining Intel, its officers, agents, employees, and those in active concert with them from using or disclosing Cloud Tank's confidential information and trade secrets, Cloud Tank Trade Secrets (1) through (10), and

108939263.2

requiring immediate remedial measures, including return and destruction of all such materials and derivatives;

B. Damages in an amount to be proven at trial, including compensatory damages, a reasonable royalty, lost profits, and/or restitution;

C. Exemplary damages for willful and malicious misappropriation under the DTSA and Delaware UTSA (up to two times compensatory damages);

D. Disgorgement of unjust enrichment as equity requires;

E. Attorneys' fees and costs as permitted by 18 U.S.C. § 1836(b)(3)(D), 6 Del. C. § 2004, and any other applicable law;

F. Pre- and post-judgment interest at the maximum rate allowed by law;

G. Such other and further relief as the Court deems just and proper.

POLSINELLI PC

OF COUNSEL:

Jonathan R. Spivey (*pro hac vice* forthcoming)
Aaron M. Levine (*pro hac vice* forthcoming)
Matt Todd (*pro hac vice* forthcoming)
POLSINELLI PC
1000 Louisiana St, Suite 6400
Houston, TX 77002
(713) 374-1600
jspivey@polsinelli.com
alevine@polsinelli.com
mtodd@polsinelli.com

February 19, 2026

/s/ Stephen J. Kraftschik
Stephen J. Kraftschik (#5623)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
(302) 252-0920
skraftschik@polsinelli.com

*Attorneys for Plaintiff Cloud Tank, Inc.*

108939263.2