# EXHIBIT B

**AGREEMENT DATE:** 12/03/2021

# INTEL CAPITAL CORPORATE NON-DISCLOSURE AGREEMENT

This Intel Capital Corporate Non-Disclosure Agreement (**"Agreement"**) is effective as of the date indicated above, between Intel Corporation and its Affiliates  (**"Intel"**), and the person or company  identified as the Participant below and its Affiliates (the "**Participant**").

**THE PARTIES AGREE AS FOLLOWS:**

1. **Definitions**.

   1.1 **"Affiliate"** means any entity that Controls, is Controlled by, or is under common Control with Intel Corporation or the Participant identified below, as applicable. "**Control**" means direct or indirect ownership, through one or more intermediaries, of more than 50% of an entity's voting capital or other voting rights.

   1.2 **"Confidential Information"** means the confidential, proprietary and trade secret information of the disclosing party to be disclosed by the disclosing party under this Agreement, and comprises:

   (a) information in tangible form that (i) bears a Confidentiality Legend or (ii) does not bear any Confidentiality Legend, if the receiving party knew, or reasonably should have known under the circumstances, that the information was confidential and had been communicated to it in confidence, and

   (b) discussions about that information that may occur before, at the same time, or after disclosure of the information.

   1.3 **"Confidentiality Legend"** means a "confidential," "proprietary," "secret," or similar legend.

   1.4 **"Covered Persons"** means employees, directors, contingent workers, and professional advisers of the receiving party and that party's Affiliates. The parties acknowledge and agree that, where the receiving party is Intel, Covered Persons who have a need to know include Intel personnel responsible for evaluating strategic corporate transactions.

   1.5 **"Intel Investment Group"** means the group of investors that have executed an agreement with Intel to become a member of its investment group.

2. **Obligations of Disclosing Party**.  The disclosing party will make reasonable efforts to mark its Confidential Information in tangible form with a Confidentiality Legend before disclosure.

3. **Obligations of Receiving Party**.  The receiving party must:

   3.1 maintain the confidentiality of the Confidential Information with at least the same degree of care that it uses to protect its own confidential and proprietary information, but no less than a reasonable degree of care under the circumstances;

   3.2 disclose any Confidential Information only to: (a) its Covered Persons who have a need to know such Confidential Information either for a potential investment in the Participant by Intel or any other strategic corporate transaction between Intel and the Participant and who in each case have agreed in writing or otherwise have an obligation to maintain the confidentiality of the Confidential Information of the disclosing party in accordance with nondisclosure terms at least as comprehensive as those in this Agreement and (b) where the receiving party is Intel, Intel may additionally disclose the Participant's Confidential Information to a member of the Intel Investment Group if an officer of Participant has provided written approval (including approval by e-mail) for Intel to disclose Participant's Confidential Information to that Intel Investment Group member. Each party will be liable for breaches of this Agreement by its Affiliates and Covered Persons. Notwithstanding anything to the contrary, Intel may without restriction disclose to Intel Investment Group members the Participant's identity, a description of the Participant's general business, and the size of the investment sought by Participant;

3.3     not disclose any Confidential Information to any other third party; and

3.4     not make any copies of the Confidential Information except copies that are necessary for the receiving party's disclosures under Section 3.2. The receiving party will identify any copies as originating from the disclosing party and retain any existing Confidentiality Legends on the copies.

4.     **Duration of the Obligation of Confidentiality**. Subject to the exceptions in Section 5, the confidentiality obligations in this Agreement will bind the receiving party for each disclosure for five years from the receipt of that Confidential Information.

5.     **Exceptions to the Obligation of Confidentiality**.  The receiving party will not be liable for the disclosure of any Confidential Information that is:

5.1     generally made available publicly or to third parties by the disclosing party without restriction on disclosure;

5.2     received without any obligation of confidentiality from a third party who rightfully had possession of the information;

5.3     rightfully known to the receiving party without any limitation on disclosure, before its receipt from the disclosing party;

5.4     the same as information that is independently developed by Covered Persons of the receiving party; or

5.5     required to be disclosed under applicable laws, regulations, or court, judicial or government agency orders. The receiving party must give the disclosing party reasonable notice before this disclosure, and must comply with any applicable protective order.

6.     **Title**. Title or the right to possess Confidential Information as between the parties will remain in the disclosing party.

7.     **No Obligation of Disclosure; Termination**. Neither party has any obligation to disclose Confidential Information to the other under this Agreement. Either party may terminate this Agreement at any time without cause by giving written notice to the other party. Each party's obligations concerning Confidential Information disclosed during the term of this Agreement will survive any termination as provided in Section 4. Either party may, at any time, request in writing that the receiving party returns or, at the receiving party's election, destroys all or part of its Confidential Information previously disclosed, and all copies of it. The receiving party must promptly comply with this request, and certify in writing its compliance.  Notwithstanding anything to the contrary, the receiving party may retain copies of the Confidential Information (including without limitation Confidential Information stored on electronic, magnetic, or similar media) in accordance with its policies and procedures in order to comply with legal and regulatory requirements.

8.     **No Reliance**.

8.1     The parties understand that neither this Agreement nor any negotiations or discussions between any party obligates either party to enter into any further agreement. Moreover, unless and until the parties sign and deliver a definitive agreement with respect to a particular transaction, neither party will be under any legal obligation of any kind whatsoever regarding any transaction by virtue of this Agreement or any written or oral expression with respect to any transaction (including without limitation the preparation or signing of any letter of intent or term sheet) by any of the parties or their representatives except for the matters specifically agreed to in this Agreement. Each party further acknowledges and agrees that each party reserves the right to terminate discussions and negotiations at any time and for any reason and without liability. Each party will be responsible for its own expenses in connection with any discussions or negotiations, unless otherwise provided in a written document signed by both parties. Under no circumstances will either party be liable to the other for any costs or damages of any kind including without limitation incidental, consequential, special or speculative damages, lost profits or loss of business (collectively, "**Damages**"), in connection with not moving forward to conclusion of any discussions or negotiations. In addition, under no circumstances will Intel be liable to the Participant for Damages in connection with a member of the Intel Investment Group not moving forward to conclusion of any discussions or negotiations.

8.2 The parties acknowledge that it would be imprudent and unreasonable to rely upon the expectation of entering into any contract regarding the subject matter of any discussions or negotiations. Any effort by either party to complete due diligence, negotiate, obtain financing, prepare contracts or otherwise perform any of its obligations will not be considered evidence of intent to be legally bound by such effort.

8.3 Participant acknowledges that: (a) Intel has invested and will continue to invest in a wide range of companies in numerous market segments; (b) Intel may invest in multiple competitors, with similar or identical strategies, within the same market segment; and (c) Intel will not maintain an exclusive relationship with any one company.

8.4 The parties agree that, unless otherwise specified in a written agreement signed by both parties, neither party will be precluded, by virtue of engaging in discussions relating to a potential business transaction or entering into such business transaction, from evaluating, acquiring from third parties, or independently developing or marketing technologies or products similar to the other party's technologies or products.

9. **Code of Conduct**. Intel has adopted a Code of Conduct, to which its employees are bound. This Code of Conduct is located at https://www.intel.com/content/www/us/en/policy/policy-code-conduct-corporate-information.html. If Participant has not already adopted a code of conduct of its own, Intel encourages Participant to do so as soon as possible and to strongly consider modeling its code after Intel's Code of Conduct. If at any time, Participant believes that any Intel employee has violated Intel's Code of Conduct, Participant should notify Intel via email at ethics.reporting@intel.com. This email account is monitored by Intel Capital's General Counsel and a representative of Intel's Ethics Oversight Committee. Any notifications to this account will be responded to promptly if appropriate contact information is included.

10. **General**.

10.1 **Independent Parties; No Obligation to Buy or Sell**. This Agreement does not create a joint venture, partnership or other form of business association between the parties, or any obligation to buy or sell products using or incorporating the Confidential Information.

10.2 **No License**. Neither party grants to the other party any license under any patents, copyrights, trademarks, or mask works either expressly, by implication, inducement, estoppel or otherwise. Any license under these intellectual property rights must be express and in a separate document signed by both parties.

10.3 **No Waiver**. If either party fails to enforce any provision in this Agreement, that party reserves and does not waive the right to enforce the same provision or any other provision of this Agreement at a later time.

10.4 **Governing Law; Non-Exclusive Jurisdiction**. All disputes arising out of or related to this Agreement, including without limitation all matters connected with its performance, will be governed by, and construed and interpreted under, the laws of the United States and the State of Delaware, without reference to conflict of laws principles. Any disputes arising out of or related to this Agreement, including without limitation all matters connected with its performance, may be brought in the courts of the State of Delaware or the Federal courts sitting in that State. Each party hereby irrevocably submits to the non-exclusive personal jurisdiction of those courts and irrevocably waives all objections to that jurisdiction and venue for those disputes.

10.5 **Entire Agreement**. This Agreement contains the complete and exclusive agreement and understanding between the parties concerning the subject matter of this Agreement. It supersedes all prior and contemporaneous proposals, agreements, understandings, negotiations, representations, warranties, conditions, and communications, oral or written, between the parties relating to the same subject matter, but will not supersede any other signed, written agreements between the parties (including without limitation non-disclosure agreements), which remain in full force and effect as separate agreements according to their terms. Notwithstanding any other provision of this Agreement, this Agreement shall govern the exchange of Confidential Information in connection with any potential investment by Intel in the Participant or any other strategic corporate transaction between Intel and the Participant. This Agreement may not be modified except in a writing signed by both parties.

10.6 **DISCLAIMER OF WARRANTIES**: The disclosing party disclaims all warranties for all Confidential Information disclosed under this Agreement, including without limitation all warranties about the accuracy or utility of the Confidential Information.

10.7 **Electronic Signatures**. If this Agreement, or any amendment to this Agreement, is executed electronically in lieu of traditional means of contract execution, the parties agree that an electronic signature will be legally binding. Neither party will contest the enforceability of this Agreement on the basis that it was executed electronically.

| INTEL CONTACT NAME | EMAIL ADDRESS |
|---|---|
| Mark E Rostick | |

**AGREED: INTEL CORPORATION**
2200 Mission College Blvd.
Santa Clara, CA 95054-1549
UNITED STATES

Signature of Vice President or above or designee

*Anthony Lin*

Authorized Signature

Printed Name: Anthony Lin
Title: VP and Managing Partner, Intel Capital
Date: 12/03/2021

████████████████████████████████

**AGREEMENT DATE:** 12/03/2021                    ████████████████████

**AGREED: PARTICIPANT**

Company Name: Cloud Tank, Inc.

Address:      897 NE Brennan Lane

City:         Hillsboro

State/Province: Oregon

Country:      United States

Postal Code:  97124

Signature of Authorized Representative (e.g., President or VP)



─────────────────────────────────────────

Authorized Signature

Printed Name: Sergiu Ghetie

Title: President

Date:    12/3/2021

**NOTE: TO ENABLE QUICK EXECUTION, INTEL HAS PRE-SIGNED THIS CNDA. ANY MODIFICATION TO THIS CNDA WILL RENDER THIS CNDA AND INTEL'S SIGNATURE NULL AND VOID.**

**DocuSign**

## Certificate Of Completion

Envelope Id: ███████████████████  Status: Completed
Subject: Intel ICAP CNDA - Cloud Tank, Inc.
Source Envelope:
Document Pages: 5  Signatures: 1  Envelope Originator:
Certificate Pages: 1  Initials: 0
AutoNav: Enabled  ████████████████
EnvelopeId Stamping: Enabled
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

## Record Tracking

Status: Original  Holder: Intel Legal Contracts  Location: DocuSign
  12/3/2021 2:14:30 PM  ████████████████

| Signer Events | Signature | Timestamp |
| --- | --- | --- |
| ████████████████ | *Sergiu Glutie* 9161421560B640A... | Sent: 12/3/2021 2:14:31 PM<br>Viewed: 12/3/2021 2:24:02 PM<br>Signed: 12/3/2021 2:29:48 PM |
| (None) | ████████████████ | |

**Electronic Record and Signature Disclosure:**
    Not Offered via DocuSign

| In Person Signer Events | Signature | Timestamp |
| --- | --- | --- |

| Editor Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Agent Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Intermediary Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Certified Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Carbon Copy Events | Status | Timestamp |
| --- | --- | --- |
| ████████████████ | COPIED | ████████████████ |

| Witness Events | Signature | Timestamp |
| --- | --- | --- |

| Notary Events | Signature | Timestamp |
| --- | --- | --- |

| Envelope Summary Events | Status | Timestamps |
| --- | --- | --- |
| ████████████████ | | |

| Payment Events | Status | Timestamps |
| --- | --- | --- |