## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CLOUD TANK INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 26-136-JLH |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| INTEL CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

## DEFENDANT INTEL CORPORATION'S OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

OF COUNSEL:

Carolyn H. Luedtke
Achyut J. Phadke
Aditi N. Ghatlia
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel:  (415) 512-4000


Dated:  March 30, 2026
Public Version Dated:  April 9, 2026

Matthew E. Fischer (#3092)
Philip A. Rovner (#3215)
Jacqueline A. Rogers (#5793)
Andrew M. Moshos (#6685)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
mfischer@potteranderson.com
provner@potteranderson.com
jrogers@potteranderson.com
amoshos@potteranderson.com

*Attorneys for Defendant Intel Corporation*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................1

III.   STATEMENT OF FACTS .................................................................................3

     A.     Cloud Tank and Its CEO's Longstanding Business Relationship With Intel ..........3

         1.     Ghetie Departs Intel After Thirteen Years and Founds SDG Logic to Continue Consulting Work for Intel on Microcode Mitigations ............4

         2.     Ghetie Founds Cloud Tank, Enters Into Amended Collaboration Agreement and Master Supply Agreement With Intel, and Receives Investment from Intel Capital ........................................5

     B.     Key Provisions in the Parties' Agreements That Preclude Cloud Tank's Claims .....................................................................................6

         1.     Intel Owns Title Over Any Microcode Developments, Modifications, and Derivative Works Under the Amended Collaboration Agreement .......................................................7

         2.     Intel Also Has an Unrestricted Worldwide License to Use Microcode Suggestions Under the M-RUNDA .........................8

     C.     Cloud Tank's Alleged Trade Secrets ...................................................9

IV.   ARGUMENT .................................................................................10

     A.     Cloud Tank May Not Fabricate a Claim By Pleading Around Operative Agreements Integral to or Incorporated by Reference Into the FAC ....................10

     B.     Cloud Tank's Trade Secret Claims Fail Under the Parties' Agreements ..............11

         1.     Intel Did Not Misappropriate the Alleged Mitigation Trade Secrets Because Intel Owns All Microcode Modifications and Is Licensed to Use Microcode Suggestions..............................................11

         2.     Intel Did Not Misappropriate the Alleged Vulnerability Trade Secrets Because Intel Was Authorized To Use That Information .............14

     C.     The Alleged Mitigation Trade Secrets and Alleged Vulnerability Trade Secrets Do Not Satisfy The Requirements For Trade Secret Protection ...............15

     D.     Cloud Tank Has Not Pled Breach of the Confidentiality Agreements ..................17

     E.     Counts IV, V, and VI Fail To State A Claim and Are Preempted by Delaware's Uniform Trade Secrets Act ................................................19

V.     CONCLUSION.................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Accenture Global Servs. GmbH v. Guidewire Software Inc.*,
631 F. Supp. 2d 504 (D. Del. 2009)................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................15

*Asset Mktg. Sys. Inc. v. Gagnon*,
542 F.3d 748 (9th Cir. 2008) ...........................................................................14

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997).......................................................................2, 10

*Conductive Techs., Inc. v. PNC Bank, Nat'l Ass'n*,
737 F. Supp. 3d 270 (M.D. Pa. 2024)..............................................................10

*Dykes v. S.E. Pa. Transp. Auth.*,
68 F.3d 1564 (3d Cir. 1995).............................................................................10

*Ethypharm S.A. Fr. v. Bently Pharms., Inc.*,
388 F. Supp. 2d 426 (D. Del. 2005)............................................................19, 20

*Insulet Corp. v. EO Flow, Co. Ltd.*,
104 F.4th 873 (Fed. Cir. 2024) ........................................................................15

*Kewanee Oil Co. v. Bicron Corp*,
416 U.S. 470 (1974)..........................................................................................16

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
755 F. Supp. 635 (D. Del. 1991)......................................................................19

*Mahfouz v. Depuy Synthes Prods., Inc.*,
No. 25-445-JLH-EGT, 2025 WL 3687973 (D. Del. Dec. 19, 2025) ...........12, 14

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
998 F.2d 1192 (3d Cir. 1993).............................................................................2

*Philip Morris, Inc. v. Brown & Williamson Tobacco Corp.*,
641 F. Supp. 1438 (M.D. Ga. 1986) .................................................................17

*Reginella Const. Co., Ltd. v. Travelers Cas. & Sur. Co. of Am.*,
949 F. Supp. 2d 599 (W.D. Pa. 2013)............................................................2, 10

*Reginella Const. Co., Ltd. v. Travelers Cas. & Sur. Co. of Am.*,
  568 F. App'x 174 (3d Cir. 2014) ...........................................................................10

*SI Handling Sys., Inc. v. Heisley*,
  753 F.2d 1244 (3d Cir. 1985)................................................................................15

*Transp. Compliance Assocs. Inc. v. Hammond*,
  No. 2:11-cv-1602, 2012 WL 1435445 (W.D. Pa. Apr. 25, 2012) ............................13

*You Map, Inc. v. Snap Inc.*,
  No. 20-00162-CFC, 2021 WL 106498 (D. Del. Jan. 12, 2021)................................19

FEDERAL STATUTES

17 U.S.C. § 101...............................................................................................7, 12

18 U.S.C. § 1839(3) ......................................................................................15, 16

18 U.S.C. § 1839(5)(B)........................................................................................11

STATE STATUTES

6 Del. C. § 2001(2)(b)........................................................................................11

6 Del. C. § 2001(4) ......................................................................................15, 16

6 Del. C. § 2007(a)...........................................................................................3, 19

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Cloud Tank, Inc.'s ("Cloud Tank") First Amended Complaint ("FAC") is significant not for what it contains but, rather, for what it omits. The FAC claims Cloud Tank's voluntary disclosure of alleged security vulnerabilities in Intel products and proposed mitigations by Cloud Tank and its CEO, Sergiu Ghetie ("Ghetie"), gives rise to claims for misappropriation of trade secrets, breach of contract, unjust enrichment, conversion, and tortious interference. What the FAC conspicuously omits is any mention of Ghetie's twenty-one-year history with Intel; Cloud Tank and its corporate predecessor's seven-year contractual relationship with Intel; and the contracts that grant Intel ownership and a license to the voluntary disclosures, all of which relate to the top-secret functioning of Intel's products. Having omitted this necessary factual background and adverse information, Cloud Tank pursues frivolous claims that are all expressly barred by the parties' agreements, fail to state a claim, and are preempted by trade secret law. Its FAC, therefore, should be dismissed.

*First*, Cloud Tank's claims are all barred by agreements between Cloud Tank and Intel. The core of Cloud Tank's FAC is its allegation that Intel misappropriated alleged trade secrets and confidential information related to (a) potential vulnerabilities in Intel's microcode and (b) proposed solutions to revise Intel's microcode to address those vulnerabilities. In a surprising lack of candor, Cloud Tank fails to describe, or even mention, the multiple agreements between the parties that make clear that Intel owns and has a license to the alleged trade secrets and confidential information. More generally, Cloud Tank fails to disclose the seven-year commercial relationship between Intel, Cloud Tank, and Cloud Tank's predecessor company SDG Logic within which these agreements arise. The parties' operative agreements can be considered in this motion to dismiss: Cloud Tank cannot use "shrewd pleading" to avoid dismissal of a "legally deficient claim" by omitting key agreements. *Reginella Const. Co., Ltd.*

*v. Travelers Cas. & Sur. Co. of Am.*, 949 F. Supp. 2d 599, 606–08 (W.D. Pa. 2013) ("*Reginella I*") (quoting *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)), *aff'd*, 568 F. App'x 174 (3d Cir. 2014) ("*Reginella II*"); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document integral to . . . the complaint may be considered without converting the motion to dismiss into one for summary judgment." (citation modified)). Under the parties' agreements, Cloud Tank's claims all fail as a matter of law because Intel owns and has a license to the purported Cloud Tank trade secrets and confidential information.

*Second*, Cloud Tank fails to state a trade secret claim because its alleged trade secrets do not meet the requirements for trade secret protection. Cloud Tank has not plausibly alleged that the supposed trade secrets are not "readily ascertainable to others"—nor can it, when Intel has direct access to its systems and microcode and employs engineers (including Cloud Tank's CEO from 2005 to 2018) to identify vulnerabilities and develop mitigations, and so is capable of ascertaining both the vulnerabilities and mitigations. Further, Cloud Tank does not, and cannot, allege that maintaining the secrecy of the alleged vulnerabilities has legitimate independent economic value.

*Third*, Cloud Tank's breach of confidentiality agreement claim is barred for the further reason that ███████████████████████████████████████████████ ████████████████████████████████████████ █████████████████████████████████████████████████ ██████████████████████████████████████████ █████████████████████████████████████

*Fourth*, Cloud Tank's claims for conversion, unjust enrichment, and tortious interference should also be dismissed for the independent reason that they are preempted by the Delaware Uniform Trade Secret Act ("DUTSA"). Cloud Tank brings these three claims based on the same factual allegations that it pleads to support its trade secret misappropriation claims. But the DUTSA "displaces conflicting tort, restitutionary and other law of this State providing civil remedies for misappropriation of a trade secret." 6 Del. C. § 2007(a).

The FAC should be dismissed in its entirety and with prejudice. Cloud Tank cannot cure the deficiencies in the FAC given the agreements that defeat its claims.

## II. NATURE AND STAGE OF PROCEEDING

Plaintiff filed the Complaint on February 5, 2026, and the FAC on February 19, 2026. The FAC includes claims for (1) violation of the Defend Trade Secrets Act ("DTSA"); (2) violation of the DUTSA; (3) breach of contract for a confidentiality agreement; (4) unjust enrichment; (5) conversion; and (6) tortious interference with prospective business opportunity.

Although not required to do so, before filing this motion, Intel's counsel raised the issues addressed herein with Cloud Tank's counsel and asked that Cloud Tank dismiss the FAC to avoid spending unnecessary time on a motion to dismiss. Cloud Tank did not agree.

## III. STATEMENT OF FACTS

### A. Cloud Tank and Its CEO's Longstanding Business Relationship With Intel

Cloud Tank was founded in 2021 by its CEO Sergiu Ghetie. FAC ¶ 4. It develops "security tools" and provides "security services" to customers. *Id.* ¶¶ 4–7, 16. Cloud Tank alleges that its "Secureware™ system is a collection of technologies designed to detect and prevent . . . cybersecurity attacks." *Id.* ¶ 5. It alleges that the technology works by "updating the firmware or 'microcode' that resides on and operates processors." *Id.*

Cloud Tank does not mention the long-term contractual business relationship that Ghetie, Cloud Tank, and its predecessor SDG Logic had with Intel between 2018 and the filing of this lawsuit in 2026. Cloud Tank also ignores the many substantive agreements between Intel and Cloud Tank or its predecessor SDG Logic, including agreements that dispose of this action. Instead of acknowledging the governing contractual framework, Cloud Tank cites only three ancillary two-page Corporate Non-Disclosure Agreements ("CNDAs") devoid of context. *Id.* ¶¶ 35–36. Intel hereby provides the Court the necessary background on the parties' relationship and agreements that Cloud Tank neglected to provide but are integral to the dispute.

1. **Ghetie Departs Intel After Thirteen Years and Founds SDG Logic to Continue Consulting Work for Intel on Microcode Mitigations**

Ghetie was an Intel employee from 2005 to 2018, working in various engineering roles on Intel's platform security team. In his time at Intel, he worked, among other things, on developing mitigations in Intel's microcode for security vulnerabilities in computer platforms running Intel CPUs. When he left Intel, he founded SDG Logic (Cloud Tank's predecessor) and through SDG Logic entered into a series of agreements with Intel.

On October 5, 2018, Ghetie and SDG Logic agreed to provide consulting services related to microcode improvements and revisions to Intel through a Consulting Service Agreement. Ex. A.[1] Specifically, Ghetie and SDG Logic agreed to ███████████████████████

---

[1] Unless otherwise noted, cited exhibits are attached to the Declaration of Philip Rovner ("Rovner Decl.") filed in support of this motion. Intel provides the parties' relevant agreements for the Court's notice and awareness. The specific agreements that are essential to (and preclude) Cloud Tank's claims and are incorporated by reference into the FAC are the Amended Collaboration Agreement, M-RUNDA, and the investment side letter agreement between Cloud Tank and Intel memorializing Intel's investment in Cloud Tank dated December 6, 2021 ("Investment Side Letter Agreement"). *See infra* Section IV.A (discussing incorporation by reference).

██████████████████████████████████████████

████████████████████████████████████  *Id.* at Addendum A § 1.

Ghetie, SDG Logic, and Intel executed the Master Restricted Use Non-Disclosure

Agreement ("M-RUNDA") on October 17, 2018.  *See* Ex. B.  This agreement was a prerequisite

for giving Ghetie and his companies access to Intel's top-secret microcode, which is the

proprietary Intel firmware that runs Intel microprocessors.  Declaration of Trevor Jones ("Jones

Decl.") ¶ 2 & Ex. A (contract transmittal form sending executed M-RUNDA to Intel necessary

for microcode access).

> ### 2.    Ghetie Founds Cloud Tank, Enters Into Amended Collaboration Agreement and Master Supply Agreement With Intel, and Receives Investment from Intel Capital

In 2021, Ghetie founded Cloud Tank.  FAC ¶ 4.  Ghetie, on behalf of Cloud Tank, and

Intel entered into the Amended Collaboration Agreement on September 30, 2021.  The purpose

of the Amended Collaboration Agreement, among other things, was to "expand[] [the existing]

collaboration program to include the Company's performance of other services for Intel, **such as**

**offensive research on Intel products**."  Ex. C at Recital C (emphasis added).  With the

Amended Collaboration Agreement, SDG Logic assigned its rights under the original

Collaboration Agreement to Cloud Tank.  *Id.* § 12; *see also id.* at Recital A.

Intel and Cloud Tank also entered into a Master Supply Agreement ("MSA") on

September 30, 2021.  Under the MSA, Intel gave Cloud Tank a restricted license to build

technology based on Intel's microcode that Cloud Tank could license and sell to third parties.

Cloud Tank agreed to pay Intel a royalty of ███ of the fees Cloud Tank charged to customers for

products based on Intel's microcode.  Ex. D (MSA).

██████████████████████████████████████████

██████████████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

**B.** **Key Provisions in the Parties' Agreements That Preclude Cloud Tank's Claims**

The FAC misleadingly asserts that "no separate license agreement or authorization was signed by the parties covering the Cloud Tank 'Confidential Information' that is the subject of this action." FAC ¶ 43. Cloud Tank doubles down on this allegation, asserting that "[n]either the Intel CNDA (FAC Exhibit C) nor the Intel Capital CNDA (Exhibit B) grants any license to use or disclose Cloud Tank's 'Confidential Information' or any other form of Cloud Tank's intellectual property," *id.* ¶ 42, while failing to disclose that *other* agreements that reference and expressly supersede those CNDAs *do* contain such a license and an ownership provision. These omitted agreements are the Amended Collaboration Agreement and the M-RUNDA. [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] are integral to or incorporated by reference into the FAC and defeat Cloud Tank's claims as a matter of law. *See infra* Section IV.A.

**1.    Intel Owns Title Over Any Microcode Developments, Modifications, and Derivative Works Under the Amended Collaboration Agreement**

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████ ██████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

Thus, Intel has title to all developments of Intel's microcode, all modifications of Intel's microcode, and all works based upon Intel's microcode that Cloud Tank creates.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████

The Amended Collaboration Agreement incorporates one of the CNDAs that Cloud Tank relies upon, specifically the Intel CNDA referenced in paragraph 35 of the FAC. *Id.* § 9.1; FAC

---

[2] ████████████████████████████

███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
████

██████████████████

[BLACK REDACTION BOX]

[BLACK REDACTION BOX]

[BLACK REDACTION BOX]

[BLACK REDACTION BOX]

[BLACK REDACTION BOX]

[BLACK REDACTION BOX]

**2.  Intel Also Has an Unrestricted Worldwide License to Use Microcode Suggestions Under the M-RUNDA**

The M-RUNDA is the restricted use NDA under which Cloud Tank's predecessor SDG Logic, and Cloud Tank as SDG Logic's affiliate, accessed Intel microcode.  The M-RUNDA governs third-party access to "Top Secret" and "Restricted Secret" information.  Ex. B § 1.3. Intel and SDG Logic entered into the M-RUNDA to give SDG Logic access to Intel's top-secret microcode subject to the necessary confidentiality restrictions and licenses to protect Intel.  Ex. G; Jones Decl. Ex. A.

The M-RUNDA applies to Cloud Tank on its face.  Cloud Tank is controlled by its CEO Ghetie and therefore is an "Affiliate" of Ghetie's prior company SDG Logic under the M-RUNDA.  [BLACK REDACTION BOX]

[BLACK REDACTION BOX]

[BLACK REDACTION BOX]

[BLACK REDACTION BOX]

The M-RUNDA, which gave Cloud Tank access to Intel's microcode, provides Intel a license to any microcode suggestions made by Cloud Tank.  [BLACK REDACTION BOX]

[BLACK REDACTION BOX]

[BLACK REDACTION BOX] *Id.* § 1.3.; *see* Jones Decl. ¶ 2 &



## C.   Cloud Tank's Alleged Trade Secrets

Cloud Tank's alleged trade secrets fall in two buckets: awareness of potential vulnerabilities in computer systems with Intel processors (the "Alleged Vulnerability Trade Secrets"), FAC ¶¶ 45–47, 50, 61, and potential mitigations for those vulnerabilities ("Alleged Mitigation Trade Secrets"), *id.* ¶¶ 49, 52, 64.

Cloud Tank alleges that in 2023 and 2025 it disclosed to Intel, with reference to a CNDA and "for evaluation purposes," both the Alleged Vulnerability Trade Secrets and related Alleged Mitigation Trade Secrets. *Id.* ¶¶ 44–74. It alleges that Intel then developed microcode patches based on Cloud Tank's disclosures. *Id.* ¶¶ 71–72.

## IV. ARGUMENT

### A. Cloud Tank May Not Fabricate a Claim By Pleading Around Operative Agreements Integral to or Incorporated by Reference Into the FAC

Cloud Tank cannot hide key information to save a legally deficient pleading from a motion to dismiss. *Reginella I*, 949 F. Supp. 2d at 606–08. Under settled law, omitted agreements that govern a party's claims are appropriate to consider at the motion to dismiss stage under the incorporation by reference doctrine. Even though Cloud Tank has ignored the operative contracts in describing its claims, those claims are still "based upon" the omitted agreement. *Id.* (observing "[plaintiff] cannot bring claims against [defendant] for its alleged behavior during their business relationship, yet protest the Court's full review of the legal nature of that relationship"); *Reginella II*, 568 F. App'x at 177 n.5 ("[W]e agree with the District Court that [plaintiff's] claims are necessarily 'based upon' th[e] [omitted agreement]."); *Dykes v. S.E. Pa. Transp. Auth.*, 68 F.3d 1564, 1566 n.3 (3d Cir. 1995) (considering omitted collective bargaining agreement that governed challenged drug testing policy under incorporation by reference doctrine); *Conductive Techs., Inc. v. PNC Bank, Nat'l Ass'n*, 737 F. Supp. 3d 270, 276–77 (M.D. Pa. 2024) (considering omitted agreement that contained unfavorable terms under incorporation by reference doctrine). The Court may consider documents "integral" to the claims in the complaint "without converting the motion to dismiss into one for summary judgment." *Burlington Coat Factory*, 114 F.3d at 1426 (citation omitted).

The Amended Collaboration Agreement and M-RUNDA dispose of Cloud Tank's claims. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████. The authenticity of these documents is not in doubt and Cloud Tank is on notice of all three agreements. Indeed, Cloud Tank's counsel of

record in this litigation, advised Cloud Tank in negotiating the Amended Collaboration Agreement.  Ex. H.  Polsinelli also advised Cloud Tank ██████████████████████ ████████████  The Amended Collaboration Agreement, M-RUNDA, ████████████ ████████████ are properly before the Court in evaluating this motion.

**B.      Cloud Tank's Trade Secret Claims Fail Under the Parties' Agreements**

To prove trade secret misappropriation, a plaintiff must show that the defendant used a trade secret "without express or implied consent" of the owner.  6 Del. C. § 2001(2)(b); 18 U.S.C. § 1839(5)(B).  Here, the express language of the parties' Amended Collaboration Agreement and M-RUNDA bars Cloud Tank's trade secret claims (Counts I–II) because Intel owned and had a license to both categories of alleged trade secrets—the Alleged Mitigation Trade Secrets and the Alleged Vulnerability Trade Secrets.

**1.      Intel Did Not Misappropriate the Alleged Mitigation Trade Secrets Because Intel Owns All Microcode Modifications and Is Licensed to Use Microcode Suggestions**

Cloud Tank's misappropriation claims fail because the Amended Collaboration Agreement grants Intel ownership of all microcode modifications and the M-RUNDA separately grants Intel a license to use microcode-related suggestions.  Each agreement independently authorizes Intel's development and release of microcode patches and thus bars the claims.

**Amended Collaboration Agreement:** The Amended Collaboration Agreement grants Intel ownership of all developments, modifications, and derivative works of its microcode.  It provides: ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ This grant of ownership defeats Cloud Tank's trade secret claims as to the Alleged Mitigation Trade Secrets for two independent reasons.

*First*, the agreement makes clear that Intel is permitted to engage in the alleged infringing conduct of releasing microcode patches. It grants Intel exclusive ownership over microcode modifications, foreclosing any claim based on Intel's development and release of microcode patches. Cloud Tank alleges that Intel misappropriated its trade secrets by "utiliz[ing] the 2023 Vulnerabilities and ████████████████████████████████████ and by "rel[ying] upon the Cloud Tank confidential information . . . to develop patches" for the 2025 vulnerabilities. FAC ¶¶ 71–72. But microcode patches are, by definition, "developments," "modifications," or "transformations" of Intel's microcode—categories of technology over which Intel retains exclusive ownership under the Amended Collaboration Agreement. Intel's development and release of microcode patches cannot constitute trade secret misappropriation: "There cannot be misappropriation when the 'acquisition, disclosure, and use of a trade secret has been expressly authorized by contract." *Mahfouz v. Depuy Synthes Prods., Inc.*, No. 25-445-JLH-EGT, 2025 WL 3687973, at *5 (D. Del. Dec. 19, 2025) (citation omitted).

*Second*, the alleged trade secrets, under the Amended Collaboration's grant of ownership, belong to Intel, not Cloud Tank. The FAC confirms that the recommended mitigations—the Alleged Mitigation Trade Secrets—are Intel's property as microcode modifications, developments, or Derivative Works under the agreement. Cloud Tank alleges that the

recommended mitigations were implemented in its Secureware system, FAC ¶¶ 49, 52, 64, while alleging that Secureware works by "updating the firmware or 'microcode' that resides on and operates processors," *id.* ¶ 5—thus confirming the proposed mitigations were microcode "updat[es]" that by definition constitute "developments," "modifications" or "Derivative Works" that Intel owned ████████████ Further, while Cloud Tank describes these mitigation strategies as ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████ *Id.* ¶ 49. This description again confirms that the alleged trade secrets are proposed algorithms to assist programmers and developers plan and implement changes to Intel's microcode—*i.e.*, "modifications," "developments," or "Derivative Works" of that microcode.

Under the grant of ownership in the Amended Collaboration Agreement, any intellectual property embodied in the Alleged Mitigation Trade Secrets is owned by Intel, not Cloud Tank, and Cloud Tank may not bring a claim for trade secret misappropriation. *See, e.g.*, *Transp. Compliance Assocs. Inc. v. Hammond*, No. 2:11-cv-1602, 2012 WL 1435445, at \*3 (W.D. Pa. Apr. 25, 2012) ("Because there can be no misappropriation of defendant's trade secrets if he did not own the trade secrets at issue, defendant does not state a claim for misappropriation of trade secrets."), *as modified*, 2012 WL 8017416 (W.D. Pa. May 3, 2012).

**M-RUNDA.** The M-RUNDA also independently bars Cloud Tank's claims, granting Intel a license to any "comments or suggestions about" microcode. Ex. B § 2.9. As discussed, that license is "irrevocable, worldwide, royalty-free[,] . . . with right to . . . use and disclose those comments and suggestions in any manner [Intel] chooses." *Id.* Accordingly, the M-RUNDA authorizes Intel to use the Alleged Mitigation Trade Secrets—which, as discussed above, consist

of suggested microcode modifications—and release the challenged microcode patches. This independent license provides a separate basis to defeat Cloud Tank's claim of misappropriation. *Mahfouz*, 2025 WL 3687973, at \*5.

### 2. Intel Did Not Misappropriate the Alleged Vulnerability Trade Secrets Because Intel Was Authorized To Use That Information

Cloud Tank's claim of misappropriation of the Alleged Vulnerability Trade Secrets similarly fails because Intel was authorized and licensed to use that information in developing microcode modifications.

As discussed, the Amended Collaboration Agreement gives Intel ownership over all microcode developments, modifications, and Derivative Works, including the microcode patches that Intel released. *See supra* III.B.1; Ex. C § 7.2. And the M-RUNDA separately grants Intel a broad license to use all microcode-related suggestions. *See supra* III.B.2; Ex. B. Intel's ownership of and license to microcode modifications and suggestions necessarily encompassed the use of information about potential vulnerabilities that underpinned the proposed modification. Indeed, the FAC confirms that the alleged vulnerability information was disclosed together with the proposed mitigation strategies. *See, e.g.*, FAC ¶¶ 53–55, 65–68. Intel could not implement those microcode mitigations that it owned and received a license to without using the underlying vulnerability information.

As courts recognize, where a party is granted a right to use a technology, that authorization extends to purported trade secret information embodied in that technology. *See, e.g.*, *Asset Mktg. Sys. Inc. v. Gagnon*, 542 F.3d 748, 758 (9th Cir. 2008) (holding that where a party had been granted an "unlimited license to the programs software," that license included "access to any trade secret embodied therein"). To the extent information about the vulnerabilities constituted a separate and protectable trade secret (a conclusion Intel disputes, *see*

*infra* IV.C), Intel's use of that information was authorized under the Amended Collaboration Agreement and the M-RUNDA and Cloud Tank's claim of misappropriation fails.

**C.** **The Alleged Mitigation Trade Secrets and Alleged Vulnerability Trade Secrets Do Not Satisfy The Requirements For Trade Secret Protection**

Although the parties' agreements dispose of Cloud Tank's trade secret claims, the FAC also fails in any event to plausibly allege the existence of any protectable trade secret, providing an independent basis to dismiss the trade secret claims (Counts I–II).

*First*, Cloud Tank fails to plausibly allege that either category of alleged trade secrets is not "readily ascertainable by proper means." 6 Del. C. § 2001(4); 18 U.S.C. § 1839(3). In applying this definition of a "trade secret," courts assess "the ease or difficulty with which the information could be properly acquired or duplicated by others." *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1256 (3d Cir. 1985). Here, there is no dispute that Intel had proper access to its own microcode. Further, Cloud Tank does not allege that Intel could not have independently ascertained the alleged vulnerabilities or developed the corresponding mitigations within its own code. *See Insulet Corp. v. EO Flow, Co. Ltd.*, 104 F.4th 873, 882 (Fed. Cir. 2024) (overturning preliminary injunction under DTSA and holding "[t]o be clear, if information is 'readily ascertainable through proper means' . . . it is not eligible for trade secret protection").

Cloud Tank offers only conclusory allegations concerning the "readily ascertainable" element. *See* FAC ¶ 78 ("The Cloud Tank Trade Secrets derive independent economic value from not being generally known or readily ascertainable by proper means to others who can obtain economic value from their disclosure or use."). Conclusory allegations that merely state the elements of a claim are insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Further, the allegation contradicts the fact that the purported trade

15

secrets are derived from the functioning of Intel's products and the code underlying those products, something with which Intel is intimately familiar. Indeed, Intel has direct access to its own microcode by proper means, and employs engineers who use that legitimate access to identify and mitigate vulnerabilities in that code and Intel's platforms—like Ghetie did from 2005 to 2018. This includes the Intel "chip security personnel," and engineers in the "Intel Product Assurance and Safety" team whom Ghetie allegedly spoke with about the 2023 and 2025 vulnerabilities, and the engineers who developed the microcode patches that Cloud Tank alleges constituted misappropriation. FAC ¶¶ 53–54, 65, 71–72.

*Second*, as to the Alleged Vulnerability Trade Secrets, Cloud Tank also fails to plausibly allege that this information "derives independent economic value . . . from not being generally known." *See* 6 Del. C. § 2001(4); 18 U.S.C. § 1839(3). The FAC alleges that ██████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████ FAC ¶ 55. But even crediting the allegation ████████ ████████████████████████████████████████████████ the economic value derives from demonstrating that Cloud Tank's technology had the ability to identify unknown vulnerabilities, not from keeping vulnerabilities secret.

Cloud Tank also alleges that "identification of security vulnerabilities can be provided to manufacturers, thus allowing manufacturers to develop their own mitigation strategies." *Id.* ¶ 27. This, again, does not point to value derived from continuing secrecy. Notably, Cloud Tank does not allege that knowledge of vulnerabilities can be sold to manufacturers as a sort of ransom, nor would it be appropriate to recognize such a theory, which would condone unethical conduct that would undermine coordinated efforts to protect computer security. *Cf. Kewanee Oil Co. v.*

*Bicron Corp*, 416 U.S. 470, 481–82 (1974) ("The maintenance of standards of commercial ethics and the encouragement of invention are the broadly stated policies behind trade secret law. 'The necessity of good faith and honest, fair dealing, is the very life and spirit of the commercial world.'" (citation omitted)).

**D.      Cloud Tank Has Not Pled Breach of the Confidentiality Agreements**

Like its trade secret claims, Cloud Tank's breach of contract claim (Count III) fails as well given the controlling agreements omitted by Cloud Tank from the FAC. Specifically, the Amended Collaboration Agreement and the M-RUNDA control over any conflicting CNDA provisions, and the CNDAs in any event do not restrict Intel's use of information that it owns.

*First*, the Amended Collaboration Agreement provides that its licensed rights control over any contrary terms in the CNDAs. *See* Ex. C § 9.3. Because the Amended Collaboration Agreement granted Intel ownership and rights to use the purported trade secrets, ███

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████ Cloud Tank therefore cannot state a claim for breach of the CNDAs based on Intel's authorized use of that information.

*Second*, the M-RUNDA also separately forecloses Cloud Tank's CNDA breach claim.

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████ *Id.*; *accord* Ex. E ¶ 1.4. As discussed above, Intel shared its microcode with Cloud Tank under the M-RUNDA subject to Cloud Tank licensing Intel to use any microcode suggestions. *Supra* III.B.2. Thus, the M-RUNDA's provisions control over the CNDA's terms, and Cloud Tank's CNDA breach claim fails. *See, e.g.*, *Philip Morris, Inc. v. Brown & Williamson Tobacco Corp.*, 641 F. Supp. 1438, 1489 (M.D.

Ga. 1986) (breach of confidentiality agreement claim "negated and rebutted" because defendant "was sublicensed to use the know-how").

*Third*, the CNDAs █████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████

*Fourth*, Cloud Tank's claim also fails because █████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████.[3]

---

[3] To the extent Cloud Tank's breach of contract claim is that alleged emails with the vulnerabilities said the vulnerabilities were for "evaluation purposes only" and these emails created a use restriction not in the CNDAs, FAC ¶¶ 53, 65, that argument fails because the CNDAs required any modification to be in writing signed by both parties. *Id.* Ex. A ¶ 8.5, *id.* Ex. B ¶ 10.5; *id.* Ex. C ¶ 8.5.

### E. Counts IV, V, and VI Fail To State A Claim and Are Preempted by Delaware's Uniform Trade Secrets Act

For all the reasons stated above, Counts IV (unjust enrichment), V (conversion), and VI (tortious interference with prospective business opportunity) should be dismissed because they are all based on Intel's alleged unauthorized use of the claimed trade secrets. *See* FAC ¶ 104 (Intel has been "unjustly enriched by its unauthorized use of the Cloud Tank Trade Secrets"), ¶ 105 ("Intel lacked any license or authorization to use Cloud Tank Trade Secrets beyond evaluation"), ¶ 108 ("Cloud Tank owns and has the right to possess the . . . Cloud Tank Trade Secrets"), ¶ 113 ("Intel intentionally and wrongfully interfered with those opportunities and relationships by, *inter alia*, using and disclosing the Cloud Tank Trade Secrets"). Because Intel's possession and use of the alleged trade secrets was licensed and subject to Intel's ownership interest, Cloud Tank fails to state a claim as to Counts IV–VI.

In addition, these three claims should all be dismissed for the independent reason that they are preempted. The DUTSA "displaces conflicting tort, restitutionary and other law of [Delaware] providing civil remedies for misappropriation of a trade secret." 6 Del. C. § 2007(a). The statute preempts all "other tort causes of action founded on allegations of . . . misappropriation." *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 636–37 (D. Del. 1991). As this Court has recognized, "[a] claim will be preempted if it is 'grounded in the same facts which purportedly support the [misappropriation] claim.'" *Ethypharm S.A. Fr. v. Bently Pharms., Inc.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005) (citation omitted); *see also You Map, Inc. v. Snap Inc.*, No. 20-00162-CFC, 2021 WL 106498, at *9 (D. Del. Jan. 12, 2021) (Hall) ("If the alleged wrongful interference is Defendants' misappropriation of [p]laintiff's secret 'technologies,' the claims are preempted by DUTSA."), *R. & R. adopted*, 2021 WL 327388 (D. Del. Feb. 1, 2021).

Preemption applies even if the information at issue does not qualify as a trade secret. *Ethypharm S.A. Fr.*, 388 F. Supp. 2d at 433. Preemption also applies even if claims have different legal elements, so long as they are "grounded in the same facts." *Accenture Global Servs. GmbH v. Guidewire Software Inc.*, 631 F. Supp. 2d 504, 508 (D. Del. 2009).

Here, Counts IV–VI are all "founded on allegations of trade secret misappropriation" and are all "grounded in the same facts." The unjust enrichment claim rests on Intel's allegedly "unauthorized use of the Cloud Tank Trade Secrets"; the conversion claim is based on Cloud Tank's alleged "right to possess . . . the Cloud Tank Trade Secrets" and Intel's alleged conversion of "Cloud Tank's rights in the Cloud Tank Trade Secrets"; and the tortious interference with prospective business opportunity claim is based on alleged interference by Intel "using and disclosing the Cloud Tank Trade Secrets." FAC ¶¶ 104, 108–109, 113. Each of these claims is preempted—providing a separate and independent basis for dismissing these claims.

## V. <u>CONCLUSION</u>

Intel respectfully requests that the Court grant Defendant's Motion To Dismiss the FAC in its entirety and with prejudice.

OF COUNSEL:                                    POTTER ANDERSON & CORROON LLP

Carolyn H. Luedtke                        By:  /s/ Philip A. Rovner
Achyut J. Phadke                               Matthew E. Fischer (#3092)
Aditi N. Ghatlia                               Philip A. Rovner (#3215)
MUNGER, TOLLES & OLSON LLP                     Jacqueline A. Rogers (#5793)
560 Mission Street, 27th Floor                 Andrew M. Moshos (#6685)
San Francisco, CA 94105                        Hercules Plaza, 6th Floor
Tel:  (415) 512-4000                           1313 N. Market Street
                                               Wilmington, DE  19801
                                               Tel:  (302) 984-6000
Dated:  March 30, 2026                         mfischer@potteranderson.com
Public Version Dated:  April 9, 2026           provner@potteranderson.com
12856845                                       jrogers@potteranderson.com
                                               amoshos@potteranderson.com

                                          Attorneys for Defendant Intel Corporation