# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CLOUD TANK INC., | ) | |
| | ) | C.A. No. 26-136-JLH |
| Plaintiff, | ) | |
| | ) | **PUBLIC VERSION** |
| v. | ) | |
| | ) | |
| INTEL CORPORATION, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

## DEFENDANT INTEL CORPORATION'S REPLY BRIEF IN SUPPORT OF
## <u>MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>

OF COUNSEL:

Carolyn H. Luedtke
Achyut J. Phadke
Aditi N. Ghatlia
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel:  (415) 512-4000

Dated:  May 14, 2026
Public Version Dated:  May 20, 2026
12925640

Matthew E. Fischer (#3092)
Philip A. Rovner (#3215)
Jacqueline A. Rogers (#5793)
Andrew M. Moshos (#6685)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
mfischer@potteranderson.com
provner@potteranderson.com
jrogers@potteranderson.com
amoshos@potteranderson.com

*Attorneys for Defendant Intel Corporation*

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ....................................................1

II.   ARGUMENT.................................................................................................................2

    A.    The ARCA, M-RUNDA, and Investment Side Letter Are Integral to Cloud Tank's Claims .........................................................................................................2

    B.    The ARCA Grants Intel Ownership Over Microcode Patches and Modifications, Foreclosing Cloud Tank's Trade Secret Claims..............................2

        1.    Under the ARCA, Intel Owns All Right, Title, and Interest to Microcode Modifications, Developments, and Derivative Works ..............2

        2.    Intel is Expressly Authorized to Engage in the Allegedly Infringing Conduct of Developing Microcode Patches ...............................................3

        3.    Intel Also Owns the Alleged Mitigation Trade Secrets, Which Are "Modifications," "Developments," and "Derivative Works" of "Software".....................................................................................................4

        4.    Intel Is Licensed to the Alleged Vulnerability Trade Secrets ......................5

    C.    The M-RUNDA Also Grants Intel a License to Modifications to its Microcode ...................................................................................................................6

    D.    Cloud Tank Has Not Alleged a Misappropriation Claim ........................................8

    E.    Cloud Tank Has Not Alleged A Breach of the CNDA.............................................9

    F.    Cloud Tank's Remaining State Law Claims Are Preempted..................................10

III.  CONCLUSION...........................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Apple, Inc. v. Psystar Corp.*,
   673 F. Supp. 2d 931 (N.D. Cal. 2009), aff'd, 658 F.3d 1150 (9th Cir. 2011) ..........................5

*Dun & Bradstreet Software Svcs. v. Grace Consulting, Inc.*,
   307 F.3d 197 (3d Cir. 2002)..................................................................................................5

*Insulet v. EO Flow, Co., Ltd.*,
   104 F.4th 872 (Fed Cir. 2024) ...............................................................................................9

*Mahfouz v. Depuy Synthes Prods., Inc.*,
   No. 25-445-JLH-EFT, 2025 WL 3687973 (D. Del. Dec. 19, 2025),
   *R. & R. adopted*, 2026 WL 788315 (Mar. 20, 2026) ...................................................................4

*Ocimum Biosolutions (India) Ltd. v. LG Corp*,
   No. 19-2227 (MN), 2021 WL 931094 (D. Del. Mar. 11, 2021) .............................................10

*Polychron v. Bezos*,
   2023 WL 6192743 (C.D. Cal. Aug. 14, 2023)..........................................................................5

*SI Handling System v. Heisley*,
   753 F.2d 1244 (3d Cir. 1985)............................................................................................ 8-9

*You Map, Inc. v. Snap Inc.*,
   No. 20-00162-CFC, 2021 WL 106498 (D. Del. Jan. 12, 2021).............................................10

*Zimmerman v. PepsiCo, Inc.*,
   836 F.2d 173 (3d Cir. 1988)...................................................................................................7

STATE CASES

*Symbiont.io, Inc. v. Ipreo Holdings, LLC*,
   No. 2019-0407-JTL, 2021 WL 3575709 (Del. Ch. Aug. 13, 2021) ........................................8

*Universal Studios Inc. v. Viacom*,
   705 A.2d 579 (Del. Ch. 1997)................................................................................................8

FEDERAL STATUTES

17 U.S.C. § 101..........................................................................................................................5

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Intel moved to dismiss Cloud Tank's First Amended Complaint ("FAC") based on its contractual rights under the parties' governing agreements.  Cloud Tank, after omitting those agreements from the FAC, now concedes there were at least nine agreements between Intel and Cloud Tank/its predecessor SDG Logic.  Nevertheless, Cloud Tank argues that those agreements may not be considered, ignoring clear Third Circuit authority allowing courts to consider such omitted agreements at the pleading stage.  Cloud Tank then offers new contractual interpretations ignoring the plain language of the controlling agreements.  Cloud Tank fails in its attempts to hide, and then rewrite, the parties' agreements, which expressly foreclose Cloud Tank's claims.

*First*, Cloud Tank raises limitations on Intel's ownership over microcode modifications under the ARCA that simply do not exist in the contract.  The ARCA grants .  This grant of ownership over Intel's ⬛⬛⬛⬛ ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ defeats Cloud Tank's claims.

*Second*, Cloud Tank offers no response to the argument that Intel's ownership over and license to microcode modifications under the ARCA and M-RUNDA necessarily authorizes Intel to use information concerning underlying vulnerabilities addressed by the modifications.

*Third*, Cloud Tank cannot evade the M-RUNDA license.  That license is not limited by ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛.

*Fourth*, Cloud Tank cannot cure the various other pleading defects in its trade secret and CNDA claims, nor can it explain why its non-contract state law claims are not preempted.

The FAC should be dismissed in its entirety.

## II.    ARGUMENT

### A.    The ARCA, M-RUNDA, and Investment Side Letter Are Integral to Cloud Tank's Claims

Cloud Tank does not dispute Intel's authority on incorporation by reference.  *See* Opp. at 7.  Under Third Circuit law, the ARCA, M-RUNDA, and Investment Side Letter are "integral" to the claims of the Complaint.  Mot. at 10.  Cloud Tank's proclamation that the two-page CNDA "is the only relevant and applicable agreement," Opp. at 7, cannot be squared with the provisions in the other agreements governing Intel's ownership and license to the alleged trade secrets. Those agreements are properly considered on Intel's motion.  Nor is Cloud Tank's argument that it need not address affirmative defenses responsive.  *Id.* at 7.  As the authorities it disregards make clear, Cloud Tank may not engage in "shrewd pleading" to hide relevant agreements and then fabricate legal claims foreclosed by those agreements.  Mot at 1, 10.

### B.    The ARCA Grants Intel Ownership Over Microcode Patches and Modifications, Foreclosing Cloud Tank's Trade Secret Claims

#### 1.    Under the ARCA, Intel Owns All Right, Title, and Interest to Microcode Modifications, Developments, and Derivative Works

As explained in the moving brief, Cloud Tank's misappropriation claims fail because the last sentence of Section 7.2 of the ARCA grants Intel ██████████████████████ ████████████████ Cloud Tank claims as trade secrets.  Mot. at 11-13.  Cloud Tank's opposition tries to rewrite ████████████████████████████████████████ ████████████████████ Opp. at 8-9.  But the ████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████.  Similarly, Cloud Tank's apparent suggestion that ██████████████

2

██████████████████████████████████████, Opp. at 9, is also unsupported, as the last

sentence ██████████████████████████████████████████████████

██████████████████████████████████████.[1]

The definition of ██████████ in the agreement also supports Intel's position. ██████████ is

defined as █████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████ D.I. 42-1, Ex. C § 1.36

(emphasis added). ████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████ *Id.* §§ 1.13, 1.37, 1.39.

Intel therefore has ██████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████. Other than reading in

non-existent limitations, Cloud Tank does not address this language, which disposes of its claim.

2.    **Intel is Expressly Authorized to Engage in the Allegedly Infringing Conduct of Developing Microcode Patches**

Cloud Tank does not respond to Intel's key argument that Intel is authorized through its

ownership of "developments" and "modifications" to Software to engage in the allegedly

infringing conduct of issuing microcode patches.  Mot. at 12; *cf.* FAC ¶¶ 71, 72, 86, 87.  This

argument is dispositive and independently requires dismissal.

As explained, under the ARCA, ████████████████████████████████████

████████████████████████████████████████████████████████████

---

[1] Intel nevertheless disputes and reserves all rights as to Cloud Tank's assertion that the Software Addendum was not subsequently amended.

3



███████. Where Intel is given ████████ ███████ "there cannot be misappropriation" in the act of releasing microcode patches. *See* Mot. at 12; *Mahfouz v. Depuy Synthes Prods., Inc.*, No. 25-445-JLH-EFT, 2025 WL 3687973, at *3 (D. Del. Dec. 19, 2025), *R. & R. adopted*, 2026 WL 788315 (Mar. 20, 2026).

### 3. Intel Also Owns the Alleged Mitigation Trade Secrets, Which Are "Modifications," "Developments," and "Derivative Works" of "Software"

Cloud Tank's claims fail for a further reason: Intel owns ███████ ███████. Cloud Tank strains to explain why Intel does not own the proposed mitigations, Opp. at 11-12, and its argument has three fatal defects.

*First*, Cloud Tank offers irrelevant asides that do not take on Intel's contractual right to ownership of microcode modifications. Cloud Tank argues that "an observation concerning ███████. *Id.* at 11. But Intel's position is that it owns the proposed mitigations, which are modifications to microcode, not "observations concerning ████." Cloud Tank also leans on its allegation that it disclosed the mitigations as ███████. *Id.* But even if Cloud Tank disclosed microcode modifications or developments in ordinary language, Intel has ███████ to those "modifications" and "developments."

*Second*, Cloud Tank ignores its own allegations in the FAC, which make clear that Cloud Tank's mitigations are implemented through microcode modifications. The FAC alleges that Cloud Tank's technologies "can be installed on existing hardware . . . by updating the firmware or 'microcode' that resides on and operates processors." FAC ¶ 5. Cloud Tank cannot run away from facts it has pled in its own complaint. That Cloud Tank now contends (in its opposition brief) that it disclosed to Intel ███████ ████ ███████

█████Opp. at 11, does not save it. Given its allegation in Paragraph 5 of the FAC, Cloud Tank disclosed modifications to the microcode operating Intel processors, as to which Intel had all right, title, and interest.

*Third*, Cloud Tank's arguments concerning ████████████ also fail for multiple reasons. Even assuming *arguendo* the mitigations were not ██████████████ they are ████████████████████████████████████████████████████████████, and so fit within the grant of ownership to Intel. Further, the mitigations *are* ██████████████ The contractual term ██████████████ incorporates the language of 17 U.S.C. section 101, which includes "any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. Under this definition, Cloud Tank's modification of microcode that "resides on and operates" Intel processors, FAC ¶ 5, is a Derivative Work of that microcode. Case law confirms that modifications to system firmware constitute a "derivative work." *See, e.g., Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931, 938-39 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011) (modifications to system software, including replacement of boot-loader and removal of kernal extensions, constituted "derivative works") (citing *Dun & Bradstreet Software Svcs. v. Grace Consulting, Inc.*, 307 F.3d 197, 208 (3d Cir. 2002)). Contrary to Cloud Tank's view, where a creator of derivative work sues the original creator for infringement, courts dismiss such claims on the pleadings. *Polychron v. Bezos*, 2023 WL 6192743, at *7 (C.D. Cal. Aug. 14, 2023) (dismissing copyright infringement lawsuit brought by creator of derivative work).

### 4.    Intel Is Licensed to the Alleged Vulnerability Trade Secrets

Cloud Tank also has no response to the argument that Intel is licensed ██████████████ ████████████████████████████████████████████████████████████ ██████████in the M-RUNDA. Mot. at 14-15. This is dispositive as to claims related to the Alleged Vulnerability Trade Secrets.

5

Cloud Tank contends that the Alleged Vulnerability Trade Secrets supposedly qualify as

███████████████████████████████████ Opp. 10-11, but does not address the license

argument.  Given Intel's express ████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████.  Mot. at 14-15.

### C.      The M-RUNDA Also Grants Intel a License to Modifications to its Microcode

The broad license under the M-RUNDA to ████████████████ also bars Cloud

Tank's claims.  Mot. at 13-14.  Cloud Tank's arguments to the contrary are unavailing.

*First,* contrary to Cloud Tank's claims, nothing in the ARCA suggests that the M-

RUNDA does not apply to Cloud Tank.  Cloud Tank points to language in the ARCA that ████

█████████████████████████████████████████████████████

D.I. 42-1, Ex. C § 9.1 (emphasis added).  The M-RUNDA, which predates this language in the

ARCA, was entered to give Ghetie, SDG Logic, and its affiliates access to Intel's microcode.

*See* Mot. at 5.  After the ARCA between Cloud Tank and Intel ████████████████ the

prior SDG Logic collaboration, Cloud Tank continued a collaboration with Intel pertaining █

████████████████ for years.  D.I. 42-1, Ex. C at 1; Mot. at 5-6.  The only reasonable

inference is that a second M-RUNDA was not ████████ because SDG Logic, Ghetie, and SDG's

affiliate Cloud Tank had continuing access to microcode under the original M-RUNDA.[2]

*Second,* Cloud Tank's argument concerning the ████████ of the M-RUNDA misreads

the agreement.  Section 2.9 of the M-RUNDA gives Intel a broad license to microcode

---

[2] Similarly, the absence of cross references between the M-RUNDA, the ARCA, or the Consulting Agreement does not change the scope of the M-RUNDA license under its terms. Cloud Tank concedes that the M-RUNDA covered information shared under the Consulting Agreement, Opp. at 3, yet there is no reference in the M-RUNDA to the Consulting Agreement.

suggestions without imposing any ▮▮▮▮▮ limitation: ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ D.I. 42-1, Ex. B § 2.9.

And the definition of ▮▮▮▮ says nothing to cabin Intel's license. *See id.* § 1.5.

In any event, Cloud Tank's disclosures *were* within the M-RUNDA's purpose. Cloud

Tank asserts that the purpose of disclosing the alleged vulnerabilities and mitigations was to

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

FAC ¶ 55. This falls squarely within the stated purpose of the M-RUNDA, to ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ D.I. 42-1, Ex. B § 1.5.

*Third*, Cloud Tank argues, unpersuasively, that its discussions with Intel about

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that fall outside the

M-RUNDA license. Opp. at 14. The FAC does not support this claim: Cloud Tank repeatedly

alleges that Ghetie discussed ▮▮▮▮▮▮▮▮▮▮ that were "in the form of pseudo-

code ▮▮▮▮▮▮▮▮▮▮ FAC ¶ 64; *see id.* ¶¶ 5, 49, 52. By

Cloud Tank's own admission, these ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ *see id.*, and therefore within the M-RUNDA license.

*Fourth*, Cloud Tank's new assertions in its opposition about the structure of Intel's

microcode into different domains are neither appropriately considered nor pertinent. "It is

axiomatic that the complaint may not be amended by the briefs in opposition to a motion to

dismiss." *Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted). Nor

do these assertions speak to the core issue: whether the mitigations that Cloud Tank disclosed

concern modifications to microcode that Intel had made available to Cloud Tank (as to which

Intel had a license under the M-RUNDA). The only factual inference available from the allegations in the FAC is that Cloud Tank ███████████████████████████████████ ███████████████████████. FAC ¶¶ 5, 49, 52, 64.

*Fifth* Cloud Tank's contention that it is not an "affiliate" under the M-RUNDA is not plausible on the face of the agreements. Cloud Tank ignores that Ghetie is CEO of SDG Logic and Cloud Tank. Mot. at 3-4. He executed agreements on behalf of both companies and both companies are located at the same address in Oregon. *Compare* D.I. 42-1, Ex. A at 1, *with* D.I. 42-1, Ex. E at 4. An "affiliate" under the M-RUNDA includes any entity that is ████████ ████████████████████████████████████████████████████████████████ ██████████████████████. D.I. 42-1, Ex. B §1.1. Under this definition, no reasonable inference can be drawn but that Cloud Tank and SDG Logic are both controlled by their CEO Ghetie, and that these two Ghetie-controlled entities are affiliates under the M-RUNDA.

Similarly, Cloud Tank's argument that the term "affiliates" only covers affiliates that existed at the time the M-RUNDA was signed, and not future affiliates, fails under clear Delaware law, which governs the M-RUNDA. *See id.* § 9.1. As the Court of Chancery has explained, a proffered interpretation limiting the term "affiliates" to those in existence at the time the agreement became effective is "unreasonable." *Symbiont.io, Inc. v. Ipreo Holdings, LLC*, No. 2019-0407-JTL, 2021 WL 3575709, at *26-27, *29-30 (Del. Ch. Aug. 13, 2021) (citing *Universal Studios Inc. v. Viacom*, 705 A.2d 579, 589 (Del. Ch. 1997)).

### D.    Cloud Tank Has Not Alleged a Misappropriation Claim

Cloud Tank fails to defend the sufficiency of its trade secret misappropriation claim.

*First*, it fails to defend its conclusory allegations regarding the "readily ascertainable" element with references to the pleadings. Opp. 16; Mot. 15. Cloud Tank's quibbles about the authority Intel cites do not cure this pleading defect. That *SI Handling System v. Heisley*, 753

8

F.2d 1244, 1256 (3d Cir. 1985) listed other elements of trade secret protection beyond being readily ascertainable does not mean ascertainability is not a requirement.  And the fact that *Insulet v. EO Flow, Co., Ltd.*, 104 F.4th 872, 882 (Fed Cir. 2024) arose in the preliminary injunction context does not change the substantive holding that ascertainability is a requirement.

*Second*, Cloud Tank fails to identify factual allegations establishing the independent economic value of continued secrecy of the Alleged Vulnerability Trade Secrets.  All of the sources of value that Cloud Tank points to arise from the *ability* to identify the vulnerabilities ("vulnerability-identification") and the development of *mitigation* strategies ("vulnerability-mitigation").  *See* Opp. at 18; *see* FAC ¶ 27.  Cloud Tank does not allege that the vulnerabilities have independent economic value from not being generally known—let alone value that should be recognized under the trade secret laws.  Mot. at 16-17.

### E.    Cloud Tank Has Not Alleged a Breach of the CNDA

In addressing its breach of contract claims, Cloud Tank ignores the language of the ARCA that makes clear that in the event there is any dispute between it and the CNDA, or the M-RUNDA and another CNDA, the text of the ARCA and the M-RUNDA, respectively, controls.  Mot. at 17.  Cloud Tank similarly misreads the Investment Side Letter Agreement, ████████████████████████████████████████████████████.  *Id.* at 6.  Intel's rights under the ARCA and M-RUNDA defeat Cloud Tank's breach of CNDA claim.

Further, Cloud Tank does not dispute that the CNDAs ████████████████████ ████████████████████████████████████████████████.  Opp. at 18.

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████.  And Cloud Tank's strained argument that ████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████. *See* FAC ¶¶ 53, 65.

### F.    Cloud Tank's Remaining State Law Claims Are Preempted

Cloud Tank's argument on preemption fails.  Intel is not relying on mere labels. Consistent with Delaware law on preemption, the court looks at whether the state law tort claims, as alleged, depend entirely on the trade secret claims.  They do: Cloud Tank pleads "Intel's enrichment is directly related to Cloud Tank's impoverishment and is unjust because Intel lacked any license or authorization to use Cloud Tank Trade Secrets beyond evaluation."  FAC ¶ 105 (Count IV – Unjust Enrichment).  Cloud Tank alleges Intel engaged in conversion because it "wrongfully" controlled Cloud Tank's property "in defiance of Cloud Tank's rights in the Cloud Tank Trade Secrets."  *Id.* ¶ 109 (Count V – Conversion).  And it alleges Intel tortiously interfered with Cloud Tank's business by "using and disclosing the Cloud Tank Trade Secrets." *Id.* ¶ 113 (Count VI – Tortious Interference).  Because these claims, "*as pleaded*, rely exclusively on facts of trade secret misappropriation," they are preempted.  *Ocimum Biosolutions (India) Ltd. v. LG Corp*, No. 19-2227 (MN), 2021 WL 931094, at *7 (D. Del. Mar. 11, 2021).

Cloud Tank also ignores that courts consistently find DTSA preemption at the pleading stage where, as here, a party has not pled and cannot identify facts establishing that the tort claims could survive if the trade secret claim failed.  *You Map, Inc. v. Snap Inc.*, No. 20-00162-CFC, 2021 WL 106498, at *9 (D. Del. Jan. 12, 2021) (Hall, J.) (recommending dismissal on pleadings); *Ocimum*, 2021 WL 931094, at *8 (dismissing claims on motion to dismiss).

### III.    CONCLUSION

For the foregoing reasons, Intel requests that the Court dismiss the FAC in its entirety and with prejudice.  Should Cloud Tank be granted leave to file a second amended complaint, it should be ordered to address the operative terms of all of the parties' agreements.

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Carolyn H. Luedtke
Achyut J. Phadke
Aditi N. Ghatlia
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel:  (415) 512-4000


Dated:  May 14, 2026
Public Version Dated:  May 20, 2026
12925640

By:  */s/ Philip A. Rovner*
       Matthew E. Fischer (#3092)
       Philip A. Rovner (#3215)
       Jacqueline A. Rogers (#5793)
       Andrew M. Moshos (#6685)
       Hercules Plaza, 6th Floor
       1313 N. Market Street
       Wilmington, DE  19801
       Tel:  (302) 984-6000
       mfischer@potteranderson.com
       provner@potteranderson.com
       jrogers@potteranderson.com
       amoshos@potteranderson.com

*Attorneys for Defendant Intel Corporation*

11